SCHELBE *v.* BUCKENHIZER.

1. APPEAL AND ERROR—DENIAL OF REHEARING—DISMISSAL OF APPEAL.
   The Supreme Court hears appeal as from the original decree, where defendants appealed from denial of a defendant's motion for rehearing and plaintiff sought dismissal of the appeal because not taken from the decree itself.

2. DEEDS—MENTAL COMPETENCY—EVIDENCE.
   Decedent *held*, not to have been mentally incompetent to execute deed of property shortly after she married one of the defendants under evidence showing she was married to a first husband for about 34 years, was a widow for 6 years and then married to such defendant for 6 years without anyone having filed a complaint or petition to have a guardian appointed for her to free her from marriage ties or to conserve her property.

3. SAME—FRAUD—HUSBAND AND WIFE—EVIDENCE.
   Deeds whereby title which plaintiff's decedent transferred to property which had theretofore stood in her own name so as to become vested in herself and one of the defendants, her second husband, as tenants by the entireties, for which he paid nothing and then transferred by him after her death without payment of anything to other defendants, his son, daughter-in-law and granddaughter are ordered set aside on the ground of fraud, where it appears that shortly before marriage to decedent, defendant had stripped himself of title to all of his realty, exercised a domination over decedent in property matters and abused trust reposed in him by her.

REFERENCES FOR POINTS IN HEADNOTES
[3] 16 Am Jur, Deeds § 30 *et seq.*
[4] 35 Am Jur, Marriage § 86 *et seq.*; § 107 *et seq.*
[4] Competent party's right to annulment of marriage because of incompetency of other party. 51 ALR 852.
   Misrepresentation or mistake as to identity or condition in life of one of the parties as affecting validity of marriage. 14 ALR 121; 75 ALR 663.
[5] 3 Am Jur, Appeal and Error § 896 *et seq.*

4. MARRIAGE—ANNULMENT—FRAUD—EVIDENCE.

A marriage may be annulled on the ground of insanity or idiocy of a party thereto by bill authorized by statute but the statutes do not authorize annulment of a marriage for fraud, merely because it is shown that husband appears to have represented himself as being wealthier than he was and conveyed his realty to his children by a former marriage before subsequent marriage to plaintiff's decedent (CL 1948, §§ 552.35, 552.37).

5. SAME—ANNULMENT—DEATH—EVIDENCE.

Annulment of marriage between a defendant and his deceased wife, as decreed by trial court after her death is set aside, where no ground for annulment has been established by the evidence.

6. ACCOUNTING—SCOPE—FRAUD.

An accounting, limited to receipts from property transferred by plaintiff's decedent to herself and defendant husband as tenants by the entireties by reason of his fraud, since her death and covering no other phase is ordered, where during the 6 years of her marriage the avails of such property appear to have been used largely in the reduction of an outstanding mortgage and use of other income of decedent seems to have been acquiesced in by her.

7. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are awarded either party where neither has prevailed in full on appeal.

Appeal from Wayne; Murphy (George B.), J. Submitted October 7, 1953. (Docket No. 19, Calendar No. 45,853.) Decided December 29, 1953. Rehearing denied February 18, 1954.

Bill by Viola Schelbe, administratrix of the estate of Margaret Draper Buckenhizer, against Frederick William Buckenhizer, Herbert B. Buckenhizer, Florence Buckenhizer, and Beverly Burton, to annul marriage, cancel certain deeds, and for an accounting. Decree for plaintiff. Defendant appeals. Reversed in part, and decree ordered entered in Supreme Court.

*Edward N. Barnard,* for plaintiff.

*Norman H. Magel,* for defendants.

REID, J. Plaintiff, as special administratrix of the estate of Margaret Draper Buckenhizer, deceased, (later substituted as general administratrix), filed (with leave of probate court) a bill of complaint against Frederick William Buckenhizer, the husband of deceased, praying that the marriage between defendant and said deceased be set aside and annulled because of fraud committed upon the deceased by defendant in procuring the marriage; also praying that certain deeds transforming the title of deceased to certain real estate owned by her into a tenancy by the entireties between defendant and deceased, with full rights to survivor, be set aside for fraud committed on deceased by defendant; and also praying for an accounting and for an injunction.

After the death of decedent, March 4, 1951, and the next day after her burial, defendant husband without consideration deeded as survivor a one-half interest in the lands in question to Herbert Buckenhizer (defendant's only living son) and Florence Buckenhizer, his wife, and the other half interest to Beverly Burton (defendant's granddaughter) as tenants in common. The latter 3 persons, Herbert and Florence Buckenhizer and Beverly Burton, were later added as defendants. The trial court found for plaintiff and entered a decree accordingly.

Defendants appealed from an order denying defendants' motion for a rehearing but did not directly appeal from the decree theretofore rendered. Plaintiff requests dismissal of the appeal for that reason. We do not dismiss the appeal on such ground and hear the appeal the same as though appeal had been taken from the original decree, a rehearing of which was denied by the trial court.

One phase of the dispute hinges upon the mental capacity of the deceased. Plaintiff claims that the decedent Margaret was during all her lifetime so far below par mentally that she was incapable of un-

derstandingly entering upon a marriage and was incapable of making a valid contract. Some witnesses testified to having observed her and having observed a want of mental concentration and apparent lack of understanding of conversation. Several witnesses on the other hand testified to her having a normal mind, including witnesses who had dealt with her and had met her frequently over a period of many years.

Deceased Margaret married John W. Draper when she was 21 years of age in 1904, and lived with him as his wife until his death on January 2, 1938. They lived at 1921 Campbell on the northwest corner of West Vernor highway and Campbell. The property consisted of a 4-family flat, a hardware store with a flat above and a home with flat above. Mr. Draper was in the hardware business and the property above described, hereinafter spoken of as the Draper property, seems to have been acquired and paid for by him largely or entirely out of the profits of the business conducted by him. A mortgage against the Draper property obtained in 1935 from the H O L C for $8,809.56 had been reduced to approximately $8,000 at the time of his death. By August 17, 1950, the mortgage had been reduced to $3,146.07. No earnings of defendant Frederick William Buckenhizer went into the reduction of the mortgage. The marriage between decedent and Mr. Draper appears to have been a happy marriage and it continued over a period of 34 years with no suggestion on the part of any of her relatives or anybody that might be concerned, that decedent was incompetent to enter into that marriage. During Mr. Draper's lifetime she often waited on the trade in the hardware store. During Mr. Draper's lifetime and afterwards for the 6 years that she remained his widow and as well, during her marriage with defendant Frederick, she seems to have kept boarders and received a consid-

erable revenue from the boarders. She collected rent from tenants, supervised the redecoration of her home, and managed the Draper property after Draper's death.

During the 47 years since her first marriage and until her death, the record fails to show that any complaint was made or petition to any court that decedent needed a guardian to free her from improper marriage ties or conserve her interest in the Draper property.

During Mr. Draper's lifetime, the title to the Draper property was placed in the name of Mr. Draper and decedent Margaret, his wife, by the entireties. There is nothing in this record to show that Mr. Draper considered that in case his wife survived him, it would be necessary that her title to the property be safeguarded by a guardian or trusteeship. The Draper property which became Margaret's upon the death of Mr. Draper, was in the later years of the value of $50,000, and during the period of over 6 years of her widowhood, it would seem that her brothers and sisters, if they felt any uncertainty about her ability to conserve her own property, would have petitioned during that period for a guardian. It seems incredible that they really considered that she ever needed a guardian. There were cash payments made on account of rent and outlays of money required for taxes and improvements to the Draper property. None of her brothers and sisters had any very close contact with these matters, helping her out only upon comparatively rare occasions. The actions and the nonaction of her brothers and sisters during all of her lifetime speak louder than, and contradict, the testimony of their friends who testified she was wanting in mental capacity.

Upon the death of his first wife, defendant Frederick William Buckenhizer gave a deed of the premises in which he and his first wife had lived as their

homestead, to his son Herbert, January 25, 1936, reserving to himself a life estate, and at the same time entered into an agreement by which Herbert was to furnish defendant Frederick William with a home, the use of a certain room in the house that had been conveyed and to take care of his funeral expenses when he died. He also gave 70 feet of a vacant lot to Herbert and the other 70 feet to his only granddaughter, Beverly Buckenhizer, now Burton, with similar reservation of life estate.

In the summer of 1944, defendant Frederick William then being retired from his railroad service, met deceased Margaret, and on September 14, 1944, they were engaged to be married. The next day defendant Frederick obtained a license to marry her, he being then 77 years of age and deceased Margaret 62 years of age. Deceased Margaret had been subject to diabetes for some time preceding this, but it seems not to have been in an acute stage. Deceased Margaret at the time of their engagement was the owner of the Draper property, the flat occupied by 4 tenants paying a total of $120 per month and the store and flat above rented for about $70 per month, and the property was worth somewhere between $30,000 and $50,000. Defendant Frederick William had a retirement allowance of $91 a month, which later became $96 a month, and he had some cash in the bank of $1,500 or less, besides life use of the house he then lived in and his son's agreement for life support.

On September 19, 1944, four days after taking out the license to marry deceased Margaret, the defendant Frederick William cancelled the agreement for his life support, and conveyed to his son Herbert and Herbert's wife, Florence, his life estate in the property on Military avenue in which he had lived with his former wife and in which he was then living, and he likewise cancelled his life estate in the 2 va-

cant lots heretofore spoken of by deeds, 1 to his son and his wife and 1 to the granddaughter. Decedent Margaret at the time of her second marriage was laboring under a false impression evidently received by her from defendant Frederick William Buckenhizer that he was a wealthy man worth about $50,000, that he had a house to live in and that he had a retirement pension fund with sufficient railroad passes to enable him to travel practically at will, taking her along.

Defendant Frederick William and deceased Margaret were married, October 14, 1944. On November 10, 1944, defendant Frederick William took his wife, deceased Margaret, to the law office of an attorney, nephew of defendant Frederick William, and in that office was drawn up a conveyance of the Draper property heretofore spoken of to a third party called a "dummy," who in turn reconveyed the property to defendant Frederick William and deceased Margaret as husband and wife, resulting that the title thereto stood in the name of the 2 by the entireties. Nothing was paid by defendant Frederick William to Margaret but he did on or about November 10, 1944, make his bank account of approximately a thousand dollars payable to himself and defendant Margaret or the survivor, with full rights to the survivor.

Apparently Frederick William abused the trust reposed in him by deceased Margaret and wrongfully exercised a domination over her as to property matters. We conclude that under all the circumstances it is fairly established that defendant Frederick William committed a fraud upon decedent Margaret in procuring the transfer of the title to the Draper property so that it became a title by the entireties of the 2, defendant Frederick William and deceased Margaret. The next day after deceased Margaret's funeral, defendant Frederick William conveyed the Draper property by deeds, so that he

no longer was an owner of it but that the title stood one half in the name of his son and wife and the other half in the name of his granddaughter Beverly, none of whom paid him anything for it.

The deeds transferring the title to the Draper property from decedent Margaret to cause that it stand in the name of decedent Margaret and Frederick William Buckenhizer, defendant, by the entireties, should be set aside, and as well, the deeds from Frederick William of the same property, to his son, his daughter-in-law and to his granddaughter, should also be set aside.

The statutes of the State of Michigan provide that a bill to annul a marriage on the ground of insanity or idiocy, may be exhibited by any person admitted by the court to prosecute as the next friend of such idiot or lunatic. CL 1948, § 552.35 (Stat Ann § 25.111).

Further, CL 1948, § 552.37 (Stat Ann § 25.113) reads:

"No marriage shall be annulled on the ground of force or fraud, if it shall appear that, at any time before the commencement of the suit, there was a voluntary cohabitation of the parties as husband and wife."

See, also, CL 1948, §§ 552.3, 552.4 and 552.5 (Stat Ann §§ 25.83, 25.84 and 25.85).

No statute of Michigan has been cited in this case which would authorize an annulment of a marriage for fraud under the circumstances of this case.

It is true that in *Mogk* v. *Stroecker*, 243 Mich 668, we considered the case on the merits and did not merely dismiss the case for want of jurisdiction, but in that case it was claimed that one spouse was married to and undivorced from another party. If that claim had been proven, the marriage attacked would

have been totally void *ab initio* even if both parties had wished it upheld.

The testimony in this case does not establish any grounds for the annulment of the marriage between deceased Margaret and defendant Frederick William Buckenhizer. That portion of the final decree which undertook to annul the marriage is reversed.

Defendant Frederick William evidently used his "pension" or retirement allowance during the marriage between himself and decedent Margaret toward the upkeep of the family. The income of the Draper property during that period seems to have gone into the reduction of the mortgage against the Draper property, at least very largely, if not entirely. Decedent Margaret seems to have acquiesced in the disposition of the avails and net income of the Draper property and of her income derived from keeping boarders during her lifetime.

An accounting should be had between the defendants and plaintiff as to the receipts from the Draper property since the death of decedent Margaret and covering no other phase. A decree will be entered in this cause in accordance with this opinion. The decree appealed from is reversed. No costs shall be awarded, neither party having prevailed in full.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.