*In re* WILLIAMS ESTATE

Docket No. 87858. Submitted April 8, 1987, at Detroit. Decided
    December 7, 1987.

Tommie Williams died intestate on July 15, 1984. On July 18,
    1984, Rosebud Williams petitioned the Wayne County Probate
    Court for commencement of probate proceedings, asserting that
    she was decedent's wife. The court appointed her the personal
    representative. On July 20, 1984, Betty Williams, asserting that
    she and not Rosebud was decedent's wife, petitioned for Rose-
    bud's removal as personal representative. Decedent was first
    married to Daisy Mae Jones in Alabama in 1945. A search of
    the two counties in Alabama where decedent and Daisy Mae
    were known to reside and Wayne County, Michigan, reveals no
    record of divorce. Rosebud married decedent on July 21, 1951,
    and deserted decedent in 1957. Decedent's marriage to Estelle
    ended in her death on February 12, 1972. Decedent married
    Betty on January 7, 1974. On December 14, 1968, Rosebud
    married John Lewis, who died on March 22, 1970. The court, J.
    Robert Gragg, Jr., J., held that Betty was decedent's lawful
    spouse and entitled to act as personal representative and to
    have the statutory share. Rosebud appealed.

The Court of Appeals *held:*

1. The court erred in finding that decedent and Daisy Mae
    were never divorced. A strong presumption exists in favor of
    the subsequent marriage where the validity of the marriage is

REFERENCES

Am Jur 2d, Courts §§ 32, 104-106.

Am Jur 2d, Descent and Distribution §§ 130-132, 137, 138.

Am Jur 2d, Divorce and Separation §§ 513-519.

Am Jur 2d, Marriage §§ 67 *et seq.*; 113-115.

Am Jur 2d, Wills § 1223.

Estoppel or laches precluding lawful spouse from asserting rights in
    decedent's estate as against putative spouse. 81 ALR3d 110.

Rights in decedent's estate as between lawful and putative spouses.
    81 ALR3d 6.

Abandonment, desertion, or refusal to support on part of surviving
    spouse as affecting marital rights in deceased spouse's estate. 13
    ALR3d 446.

Presumption as to validity of second marriage. 14 ALR2d 7.

attacked on the ground that one party was already married to another. The evidence of the record search in Alabama and Wayne County did not overcome the presumption.

2. The evidence was sufficient to support the court's finding that decedent had not divorced Rosebud.

3. The court erred in holding that, on equitable grounds, Betty was entitled to the status of lawful spouse. Rosebud was decedent's lawful spouse.

4. On equitable grounds Rosebud is estopped from asserting her status as spouse because of her long silence and her remarriage.

Affirmed.

1. HUSBAND AND WIFE — SUBSEQUENT MARRIAGES — PRESUMPTIONS.

A strong presumption exists in favor of a subsequent marriage where the validity of the marriage is attacked on the ground that one party was already married to another.

2. COURTS — PROBATE COURTS — JURISDICTION — EQUITY.

Over matters of which it has jurisdiction, the probate court has the same powers as the circuit court to make any proper order, including the power to provide equitable relief.

3. DEATH — SPOUSES — DESERTION — ABANDONMENT — ESTOPPEL.

Desertion or abandonment is generally held to be a bar to any right to share in the estate of a deceased spouse.

4. DEATH — SPOUSES — ESTOPPEL — BIGAMY.

A surviving spouse is estopped from asserting rights under a marriage, even when her husband informed her he had obtained a divorce, when at the time she entered into her second marriage, she knew her first husband was still alive and that *she* had not obtained a divorce from him and that she had not been served with any papers in any divorce proceeding that he may have instituted.

*David M. Caplan, P.C.* (by *David M. Caplan*), for petitioner Betty Williams.

*Temple & Cutler* (by *Michael A. Weisserman*), for respondent Rosebud Williams.

Before: DANHOF, C.J., and GRIBBS and K. JAN-
SEN,* JJ.

DANHOF, C.J. Respondent, Rosebud Williams
(Rose), appeals from a November 7, 1985, order of
the Wayne County Probate Court, which removed
her as personal representative of the estate of
decedent Tommie Williams and determined that
petitioner, Betty Williams, not Rose, was dece-
dent's lawful spouse.

Decedent died intestate on July 15, 1984. Three
days later, on July 18, 1984, Rose petitioned the
court for commencement of probate proceedings,
asserting that she was decedent's wife. Pursuant to
her petition, Rose was appointed personal repre-
sentative. On July 20, 1984, Betty petitioned the
court to remove Rose as personal representative.
Betty asserted that she, not Rose, was decedent's
wife.

It is undisputed that decedent married four
times. The factual dispute of the instant case
centers on whether the decedent was equally pro-
lific in obtaining decrees of divorce. The probate
court found that decedent was negligent in this
area and had divorced no one. However, decedent's
third marriage (to Estelle) ended with the death of
his third wife.

Decedent and Betty, his fourth wife, entered into
a ceremonial marriage on January 7, 1974, at
which time a marriage certificate was duly exe-
cuted. The two lived together as man and wife
until decedent's death in 1984. Betty testified
when she married decedent it was her understand-
ing that decedent had been married only once
previously and that his former wife, Estelle, had
died. Betty's marriage certificate supported her
claim. It indicated only one previous marriage for

* Circuit judge, sitting on the Court of Appeals by assignment.

decedent. The probate court found that Betty entered into marriage in good faith without knowledge of decedent's first and second marriages and without knowledge that decedent had not divorced his previous wives.

Betty testified further that she later learned that decedent had been married two other times. Decedent told her that Rose had divorced him and married another man. Betty contends that she did not learn of Rose's claim that decedent had not divorced her (Rose) until after decedent's death, when it was too late to remedy the situation.

In 1973, prior to their marriage, Betty and decedent purchased a rental home. However, the home was deeded in decedent's name alone. The rental home is the predominant estate asset.[1] Betty contended, and the probate court so found, that she contributed to the purchase price of the home from her personal funds, that both Betty and decedent were obligated on the mortgage, and that Betty contributed to the monthly mortgage payments. Betty asserts she would be unable to meet her obligations on the mortgage if the spousal intestacy share of the house and rents were awarded to Rose.

Rose testified that she married decedent on July 21, 1951, and presented a copy of the marriage certificate. During their marriage, Rose gave birth to a daughter, Bertina. Bertina's status as heir is not contested.

In a document filed with the probate court on July 18, 1984, when Rose sought appointment as personal representative, Rose acknowledged that

[1] However, it appears that our resolution of the instant case may also influence whether Rose or Betty is entitled to receive as decedent's survivor monthly benefits from decedent's pension, life-time hospitalization benefits, the proceeds of life insurance policies, and Chrysler stock.

she deserted decedent in 1957. Sometime after this separation, Rose learned "through hearsay" that decedent had divorced her. Rose testified that after decedent married Estelle, the third wife, she married John Lewis on December 14, 1968. Lewis died on March 22, 1970. Estelle died on February 12, 1972.

Rose testified that, when she was helping decedent with funeral arrangements for Estelle, she asked to see the divorce papers. Decedent responded that he had never divorced her. Rose testified that she had never divorced decedent. Thus, Rose argued that Betty could not be decedent's lawful spouse.

Rose also testified that after Estelle died she helped decedent care for three nephews and nieces of whom he was guardian. Rose suggested he hire a baby-sitter. Evidently, Betty was the baby-sitter decedent hired.

Decedent's first marriage was to Daisy Mae Jones, whom he married in Pickens County, Alabama, on December 1, 1945. In a brief filed with the probate court, Betty asserted that a diligent search had been made of the divorce records of two counties in Alabama where decedent and Daisy were known to reside and of the Wayne County divorce records and that no record of divorce had been found. Thus, Betty argued that decedent had not divorced Daisy and therefore Rose could not be decedent's lawful spouse. The problem with this argument was that it also impaired Betty's status as lawful spouse.

The probate court attempted to notify decedent's first wife of the probate proceedings. A letter, dated November 19, 1984, from a Detroit attorney appears in the file. It begins: "The 'real' Mrs. Williams is alive and well in St. Louis, Missouri." The attorney explained that an attorney from St.

Louis had contacted him to investigate the situation and that he might be employed to assist in presenting Daisy's claim. The letter asserted without explanation that decedent and Daisy never divorced. However, despite the fact she was notified and indicated some initial interest, Daisy never filed an appearance in the probate proceedings.

On June 27, 1985, the probate court entered its opinion. The court held:

> This court finds that the decedent married both Petitioner [Betty] and Respondent [Rose] without first obtaining a divorce from his prior wives. This court further notes that Respondent and decedent had a child, Bertina, during their marriage. Also, this court notes that Respondent and decedent separated almost eleven (11) [sic; seventeen] years prior to decedent's marriage to Petitioner and that Respondent remarried during the time of their separation. Further, this court notes that Petitioner and decedent entered into a ceremonial marriage without her knowledge of decedent's prior wives. Additionally, this court notes that Petitioner contributed to the purchase of the rental property which is an asset of decedent's estate and has been making the mortgage payments since decedent's death. This court concludes that Petitioner is decedent's lawful spouse inasmuch as this court finds that her marriage to decedent was solemnized in good faith, without her knowledge of decedent's other marriages, they lived together as husband and wife since they entered their marriage in 1974, and they both contributed to the purchase of the rental property which is now an estate asset. *Mogk v Stroecker,* 243 Mich 668[;] 220 NW 730 (1928). This court recognizes the law favoring a subsequent marriage in the case at bar. To permit Respondent to come forward now and claim a spousal share would cause an injustice to Petitioner. In this case, Respondent herself remarried while decedent was

still living. Secondly, Respondent waited over twenty (20) years until decedent's death, to come forward and assert her argument.

This court holds that Petitioner is the lawful spouse of decedent, is entitled to act as personal representative of decedent's estate, and is entitled to her statutory share of decedent's intestate estate to which decedent's daughter, Bertina is also entitled.

On appeal, Rose first attempts to avoid the probate court's factual finding that decedent and Daisy never divorced. Rose asserts that Daisy failed to file an appearance or claim of the estate and introduced no evidence to rebut the claims of "any subsequent spouse." However, Daisy is not the only one who was entitled to introduce evidence on the validity of Rose's marriage. Betty, as a potential heir, could, and did introduce proof contesting Rose's claim of heirship. However, we find that the proofs relative to Daisy were insufficient to support the probate court's conclusion that decedent and Daisy never divorced.[2]

In Michigan, where the validity of a marriage is attacked on the ground that one of the parties was married to another, a very strong presumption exists in favor of the validity of the second marriage. *Doertch v Folwell Engineering Co,* 252 Mich 76; 233 NW 211 (1930); *Quinn v Quinn,* 4 Mich App 536; 145 NW2d 252 (1968). The presumption is not rebutted by testimony of the first spouse that, to the best of her knowledge, her husband never attempted to procure a divorce from her and that she had never received or been served with divorce papers, *In re Adams Estate,* 362 Mich 624,

---

[2] The only proofs relative to Daisy were unsworn assertions in Betty's brief and in a letter by an attorney not representing any party to the proceedings. Since the parties have not raised the issue, we do not decide whether the allegations were in a proper form. See MCR 5.708.

626; 107 NW2d 764 (1961), or by testimony that a search was made in the county wherein decedent was known to have resided and no record of divorce was discovered, *Doertch, supra,* p 77. The possibility exists that an absent spouse could have obtained a divorce elsewhere. *Mogk v Stroecker,* 243 Mich 668; 220 NW 730 (1928).

In the instant case, no evidence was introduced indicating where decedent resided after he left Alabama. It is possible that decedent divorced Daisy in a county where the records were not searched. The evidence was insufficient to rebut the presumption of the validity of a subsequent marriage. The probate court erred in finding that decedent and Daisy had never divorced.

However, there was sufficient evidence to support the court's finding that decedent had not divorced Rose. Betty testified that decedent told her Rose had divorced him. Rose testified she had never divorced decedent. It is an important distinction from prior precedents that the person who was to have obtained the divorce testified. Since the probate court gave credence to the testimony that no divorce was obtained, there was clear and convincing evidence to rebut the presumption of the validity of the marriage between decedent and Betty. The probate court erred in concluding, on equitable grounds, that Betty was entitled to the status of lawful spouse. Rose was decedent's lawful spouse.

While the equitable grounds relied upon by the probate court are not relevant to the question of legal status, we conclude that the equitable positions of the parties are important considerations with which the probate court was properly concerned. Over matters of which it has jurisdiction, the probate court has the same powers as the circuit court to make any proper order, including

the power to provide equitable relief. MCL 600.847; MSA 27A.847.

We conclude that Rose is estopped from asserting her legal status. We base our conclusion on several grounds. Rose deserted decedent in 1957. Rose herself remarried without obtaining a divorce and without making reasonable efforts to ascertain whether decedent had divorced her. Equally important is the fact that Rose learned that no divorce existed in 1972 yet remained silent when decedent married Betty in 1974. It also appears Rose had the opportunity to bring the defect to Betty's attention so that the defect could be cured since Rose acknowledges in her appellate brief that she maintained "consistent social contact throughout the term of the deceased's life." After ten years of purported matrimony ended with decedent's death only then did Rose step forward to announce that she was his lawful spouse. The apparent object of Rose's claim is the bounty produced by decedent's and Betty's ten years of labor.

While we have discovered no case law in which a Michigan appellate court has considered the question of estoppel in the context presented here, courts of other states have reached similar results. The equitable approach which many of our sister states have adopted is summarized in Anno: *Estoppel or laches precluding lawful spouse from asserting rights in decedent's estate as against putative spouse,* 81 ALR3d 110, 116. It has long been the majority rule that desertion or abandonment is generally held to be a bar to any right to share in the estate of a deceased spouse. *Walker v Matthews,* 191 Miss 489, 511-512; 3 So 2d 820 (1941); Anno: *Misconduct of surviving spouse as affecting marital rights in other's estate,* 71 ALR 277, 285. It has also been held that a surviving spouse is estopped from asserting rights under a marriage,

even when her husband informed her he had obtained a divorce, when at the time she entered into her second marriage she knew her first husband was still alive and that *she* had not obtained a divorce from him and that she had not been served with any papers in any divorce proceeding that he may have instituted.[3] *In re Butler Estate,* 444 So 2d 477 (Fla App, 1984). See also *Gaston v Gaston,* 358 So 2d 376, 379 (Miss, 1978). Finally, estoppel has been applied in situations where a wife slept on her rights "year in and year out and who, by her silence and acquiescence, allowed the rights of a third party to intervene." *Brown v Brown,* 274 Cal App 2d 178, 190; 79 Cal Rptr 257; 82 Cal Rptr 238 (1969). However, compare *In re Atherley Estate,* 44 Cal App 3d 758; 119 Cal Rptr 41 (1975). The instant case presents a situation where all three of the above grounds are present.

Since we conclude that Rose is estopped from asserting her legal status as decedent's lawful spouse, she did not have standing to rebut the presumption of the validity of decedent's subsequent marriage to Betty. Although upon a slightly different rationale, the decision of the probate court is affirmed.

Affirmed.

---

[3] Were this the only ground, our conclusion would be different. MCL 700.185; MSA 27.5185 provides that a person living in a bigamous relationship shall not inherit from the estate of his or her lawful spouse. However, unlike the present factual situation, the bigamist relationship must exist *at the time* of the death of the lawful spouse. *In re Dettman's Estate,* 195 Mich 231; 161 NW 836 (1917) (construing analogous language under prior statute). The statutory implication is that a *prior* bigamist relationship is not by itself sufficient to bar a surviving spouse from receiving a share of her husband's estate. However, in our opinion, MCL 700.185; MSA 27.5185 does not preclude consideration of a *prior* bigamist relationship in conjunction with other equitable bases for estoppel.