*In re* POPE ESTATE

STARR-POPE v POPE

Docket No. 146201. Submitted January 11, 1994, at Detroit. Decided May 3, 1994, at 9:40 A.M.

Deborah D. Starr-Pope, third wife of Charles-Larry D. Pope, Jr., who died intestate, petitioned the Wayne County Probate Court for a determination of the decedent's heirs at law. Denise Pope, second wife of the decedent, responded and claimed that she was the decedent's lawful wife at the time of his death. Following a bench trial, the court, Joseph J. Pernick, J., declared the respondent to be the decedent's widow and rightful heir. The petitioner appealed.

The Court of Appeals *held:*

1. There is a strong presumption of validity in favor of a later marriage when it is challenged on the ground that one of the parties was already married. The presumption may be rebutted by clear and positive proof to the contrary. In this case, evidence indicating that the petitioner had ample warning that the decedent may have lied about his marital status and that the petitioner did not act reasonably or in good faith in failing to investigate that possibility was sufficient to rebut the presumption of the validity of the decedent's marriage to the petitioner.

2. The respondent was not estopped from asserting the validity of her marriage to the decedent.

3. The petitioner is not entitled to a new trial on the basis of newly discovered evidence. The purported new evidence, i.e., the identity of the decedent's first wife, easily could have been ascertained by the petitioner from the evidence at the trial.

Affirmed.

HUSBAND AND WIFE — SUBSEQUENT MARRIAGES — PRESUMPTION OF VALIDITY.

A strong, but rebuttable, presumption exists in favor of a subse-

REFERENCES

Am Jur 2d, Bigamy § 42.

Presumption as to validity of second marriage. 14 ALR2d 7.

Estoppel or laches precluding lawful spouse from asserting rights in decedent's estate as against putative spouse. 81 ALR3d 110.

quent marriage where the validity of that marriage is attacked on the ground that one party was already married to another.

*Robert Mann,* for the petitioner.

*Willa Mae King,* for the respondent.

Before: Hood, P.J., and R. J. Danhof* and J. Stempien,** JJ.

Per Curiam. Petitioner, decedent's third wife, appeals as of right from the probate court's determination that respondent, decedent's second wife, was decedent's lawful wife at the time of his death and was therefore his rightful heir. Decedent's first wife was not part of these proceedings. The parties do not appeal the probate court's determination that petitioner's son with decedent, who was born a year before their alleged marriage, was also decedent's lawful heir. We affirm.

In Michigan, there is a strong presumption of validity in favor of a later ceremonial marriage that is challenged on the ground that one of the parties was already married. *In re Adams Estate,* 362 Mich 624, 626; 107 NW2d 764 (1961). This presumption is particularly strong where there are children born of the later marriage. *Id.* at 626-627. We note, however, that petitioner's child with the decedent was born before and not during their alleged marriage.

The presumption of validity may be rebutted by "clear and positive proof to the contrary." *Id.* at 626. That is, with "a showing of facts or circumstances which either may establish the validity or invalidity of the marriage conclusively or raise an

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1993-6.

** Circuit judge, sitting on the Court of Appeals by assignment.

issue to be determined upon [a] preponderance of the evidence." *Id.* at 627. However, "[t]he presumption is not rebutted by testimony of the first spouse that, to the best of her knowledge, her husband never attempted to procure a divorce from her and that she had never received or been served with divorce papers, . . . or by testimony that a search was made in the county wherein decedent was known to have resided and no record of divorce was discovered, . . . [because t]he possibility exists that an absent spouse could have obtained a divorce elsewhere." *In re Williams Estate,* 164 Mich App 601, 607-608; 417 NW2d 556 (1987) (citations omitted).

Petitioner argues that the probate court's decision that the presumption had been rebutted was against the great weight of the evidence and clearly erroneous. She also argues that respondent was estopped from arguing that she was decedent's lawful wife at the time of his death. Lastly, she argues that there is newly discovered evidence that decedent's marriage to respondent may not have been valid and that this entitles her to a new trial. We disagree on all counts.

The evidence introduced at trial showed that decedent, a police officer, married respondent in 1983. They had no children. However, respondent's daughter from a previous relationship lived with them.

In 1986, the petitioner, while driving a car, was asked to stop her car by decedent in his patrol car three times, and each time decedent asked her for a date. She finally agreed. A child was born of this relationship in 1988. Petitioner married decedent in a ceremony held in Toledo, Ohio, in 1989. The decedent was murdered in 1990.

Decedent somehow managed to live openly with both respondent and petitioner until his death.

Both testified that he often spent the night away from home, allegedly on confidential police business. He received mail at both addresses.

Before their marriage, petitioner asked decedent whether he was married and he denied it. Other witnesses corroborated that he denied ever having been married before. However, before the wedding, petitioner had been at his home at least twice and had seen not only respondent, but also her teenage daughter, answer the door. Respondent also frequently answered the phone when petitioner telephoned that address.

Decedent apparently explained to petitioner that respondent was his "sometimes live-in girlfriend" with whom he occasionally "played house." According to petitioner, after the marriage, she sent respondent a copy of her marriage license and told her that decedent had married her. According to respondent, no marriage license was enclosed and she informed petitioner that, if decedent had married her, he was a bigamist.

Decedent and respondent were separated for several months in 1988. He filed a complaint of divorce, which was dismissed for lack of progress. Respondent was also aware that decedent had a son. Decedent had filed a second complaint of divorce about a month before he was murdered. No divorce had been granted at the time of his death.

We cannot agree with petitioner that the trial court's conclusion was against the great weight of the evidence. Rather, we agree with the trial court that petitioner had ample warning that decedent may have been lying about his marital status and that she did not act reasonably or in good faith in failing to investigate. The evidence showed that respondent's marriage to decedent was undissolved and that he therefore lacked the capacity to marry

petitioner. See *Beaudin v Suarez,* 365 Mich 534, 536; 113 NW2d 818 (1962) (presumption of validity does not apply where "there is a clear showing that the earlier marriage has not been dissolved"). The trial court properly found that the presumption of validity of decedent's marriage to petitioner had been rebutted.

We also agree with the trial court that respondent was not estopped from asserting the validity of her marriage. The only case cited by petitioner to support her estoppel argument is clearly inapposite. In *Williams, supra* at 609, the decedent's second wife had deserted him and had married another without bothering to divorce him. She had known for twelve years before his death that there had been no divorce. *Id.* She kept silent when, two years after the death of his third wife, he married again. *Id.* She kept in "consistent social contact" with decedent and his fourth wife until he died— only then did she come forward to claim his estate. *Id.* She was rightfully found to have unclean hands and to therefore be estopped from asserting the validity of her marriage. *Id.* at 608-609.

Respondent in the present case suffers from no similar problems. As far as she was concerned, she lived with the decedent as husband and wife openly and almost continuously until his death. She had no duty to explain her marital status to every person who called or visited her husband, especially given his line of work. She was not estopped from asserting her rights.

Lastly, we disagree that there is newly discovered evidence that would entitle petitioner to a new trial. On respondent's marriage certificate, which was introduced into evidence below, decedent was listed as having been married once before. Petitioner could have easily ascertained the

identity of decedent's first wife if she had acted with reasonable diligence in following this lead. The identity of the first wife is therefore not "newly discovered evidence" within the meaning of the court rules. See MCR 2.611(A)(1)(f); MCR 2.612(C)(1)(b); *Hauser v Roma's of Michigan, Inc,* 156 Mich App 102, 106; 401 NW2d 630 (1986).

Affirmed.