DETROIT DIESEL CORPORATION, the Detroit Diesel Corporation Hourly–Rate Employees Pension Plan, the Detroit Diesel Corporation Health Care Program for Hourly Employees, and the Detroit Diesel Corporation Personal Savings Plan for Hourly–Rate Employees, Plaintiffs,

v.

Patricia LANE–SMITH, Juanita Michelle Spivey, John L. Smith, Jr., Debra Valentine, and All other Claimants, Defendants.

Civil No. 98–40029.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 17, 1999.

Jay B. Knoll, Honigman, Miller, Detroit, MI, for Detroit Diesel Corporation.

Gregory V. Murray, William E. Altman, Vercruysse, Metz & Road, Bingham

Farms, MI, for Detroit Diesel Corporation Hourly Employee Pension Plan, Detroit Diesel Corporation Health Care Program For Hourly Employees.

Warren J. Widmayer, Ferguson & Widmayer, Ann Arbor, MI, for Patricia Lane Smith.

Richard J.Gianino, Plunkett & Cooney, Petoskey, MI, for Juanita Michelle Spivey.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT/COUNTER–PLAINTIFF PATRICIA LANE–SMITH'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT JUANITA MICHELLE SPIVEY'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Presently before the Court are two cross motions for summary judgment, each submitted by a defendant in the above-entitled case. This is an action for interpleader and declaratory relief brought pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* The sole issue presented for consideration is which of two competing parties is entitled to benefits payable to the beneficiary of John L. Smith, Sr. On November 30, 1998, defendant/counter-plaintiff Patricia Lane–Smith (hereinafter "defendant Lane–Smith") filed a motion for summary judgment. On the same date, defendant Juanita Michelle Spivey filed her own motion for summary judgment. Defendant Lane–Smith responded to Spivey's motion on December 9, 1998. On December 22, 1998, plaintiffs/counter-defendants Detroit Diesel Corporation, the Detroit Diesel Corporation Hourly–Rate Employees Pension Plan, the Detroit Diesel Corporation Health Care Program For Hourly Employees, and the Detroit Diesel Corporation Personal Savings Plan for Hourly–Rate Employees (hereinafter "DDC benefit plans") responded to both motions for summary judgment by submitting a single

brief addressing the arguments of both defendants. Lastly, on December 29, 1998, defendant Lane–Smith filed a reply to plaintiffs' response. Oral argument was heard on January 27, 1999.

For the reasons set forth below, the Court will grant defendant/counter-plaintiff Patricia Lane–Smith's motion for summary judgment and deny defendant Juanita Michelle Spivey's motion for summary judgment.

## I. PROCEDURAL HISTORY

On January 15, 1998, plaintiffs filed a complaint for interpleader and declaratory relief, seeking to determine to whom benefits should be paid under the DDC benefit plans. On April 27, 1998, defendant/counter-plaintiff Lane–Smith filed an answer and counterclaim, seeking benefits allegedly due to her, as well as decedent John L. Smith's final paycheck, interest, and attorney's fees. On May 21, 1998, plaintiffs responded to Lane–Smith's counterclaim and asserted a number of affirmative defenses.

On June 22, 1998, defendant Lane–Smith filed her first motion for summary judgment. In an order issued on July 28, 1998, this Court denied defendant's motion for summary judgment without prejudice. The Court held that the motion was premature due to the fact that at that time the other claimants had not filed answers, nor had they had an opportunity to respond to defendant's arguments set forth in her initial motion for summary judgment. The Court further held that Lane–Smith would be allowed to file another motion for summary judgment once all defendants were provided an opportunity to respond. As stated above, such a motion was filed on November 30, 1998. On the same date, defendant Juanita Michelle Spivey also filed a motion for summary judgment.

Other potential claimants specifically designated as defendants in the instant action included decedent's son, John L. Smith, Jr. and decedent's daughter, Debra Valentine. Neither of these potential claimants responded to plaintiffs' complaint. As a consequence, a clerk's entry of default was entered as to John L. Smith, Jr. on August 5, 1998. On the same date, a clerk's entry of default was entered as to Debra Valentine. Pursuant to this Court's June 11, 1998 order allowing substituted service, plaintiffs caused to be published a notice to all unknown claimants and Juanita Michelle Spivey in the Detroit Legal News on June 26, July 3, and July 10, 1998. Since only Lane–Smith and Spivey have responded, their claims are the only claims which will be considered by this Court.

## II. FACTUAL BACKGROUND

### A. The Detroit Diesel Corporation Benefit Plans

The DDC benefit plans provide benefits to the surviving spouse of a deceased participant. Additionally, the Detroit Diesel Corporation Personal Savings Plan for Hourly–Rate Employees specifically provides that the surviving spouse is to be the beneficiary of a married participant, unless the participant expressly designates a beneficiary other than the spouse *and* the spouse consents in writing.

John L. Smith, Sr. was an hourly employee of the Detroit Diesel Corporation (DDC) and was a participant in the DDC benefit plans enumerated above. Smith died on November 11, 1996. At the time of his death, DDC had no record that Smith was married. Smith had designated his son, John Smith, Jr., as his sole beneficiary with respect to the DDC Personal Savings Plan. *See* Exh. A to Plaintiffs' Brief in Opposition to Defendants' Cross Motions. Although John Smith, Jr. is designated as beneficiary of his father's 401(k) account of the DDC Personal Savings Plan, *no spousal consent form permitting his designation as beneficiary is on file.*

Upon the death of John L. Smith, Sr., DDC received competing claims for benefits payable under the DDC benefit plans.

In all, four individuals asserted claims to the proceeds. First, John Smith, Jr. submitted a claim to recover proceeds of the decedent's savings plan.[1] The next claimant to contact DDC was a woman currently residing in California, Patricia Lane–Smith, who claimed that she was the legal spouse of decedent. Approximately two weeks later, Juanita Michelle Spivey contacted DDC and also claimed to be the legal spouse of John L. Smith, Sr. Lastly, Debra Valentine contacted DDC, asserting that she was decedent's daughter and entitled to the proceeds via a holographic will by which decedent is purported to have devised all of his assets in equal shares to Valentine and John Smith, Jr., her brother. *See* Exh. E to Plaintiffs' Brief in Opposition to Defendants' Cross Motions. As previously discussed, neither child's claim to the benefits are under consideration.

## B. The Relationship Between Defendant/Counter–Plaintiff Patricia Lane–Smith and Decedent John L. Smith, Sr.

According to defendant Lane–Smith, she and decedent were involved in a relationship from 1964 to 1968. *See* Affidavit of Patricia Lane–Smith (hereinafter "Lane–Smith Affidavit") attached as Exh. 1 to Defendant/Counter–Plaintiff's Brief in Support. This relationship allegedly resulted in two sons being born to Lane–Smith. *See id.* ¶ 1. Between 1968 and 1988, Lane–Smith and decedent were purportedly in intermittent contact with one another. *See id.* ¶ 2. Throughout this time, according to the affidavit testimony of Lane–Smith, she raised the couple's two sons without any regular assistance from the decedent.

On September 3, 1988, Patricia Lane–Smith and decedent were lawfully married in the County of Solano, State of California. This marriage is evidenced by County of Solano Certificate of Registry of Marriage Number 869, attached as Exhibit 3 to Defendant/Counter-Plaintiff's Brief in Support. According to Lane–Smith, she and decedent lived together in Detroit, Michigan for a period of time following their marriage, but because Lane–Smith was unable to find work in the area, she returned to California in late 1988. *See* Lane–Smith Affidavit ¶ 6. Decedent continued to reside in the Detroit area until his death in 1996. *See id.* ¶ 7.

According to Lane–Smith, from 1988 until his death, she and decedent were in "frequent physical, written, and telephone contact ." *See id.* ¶ 9. In late 1991 or early 1992, Lane–Smith allegedly became aware of a rumored marriage between decedent and defendant Juanita Michelle Spivey. *See id.* ¶ 8. The purported marriage was alleged to have occurred on September 18, 1991 in the County of Lucas, State of Ohio. *See* Exh. 4 to Defendant/Counter–Plaintiff's Brief in Support. According to deposition testimony of Lane–Smith, decedent denied his purported marriage with Spivey when confronted by Lane–Smith. *See* Lane–Smith Deposition, p. 18. According to Lane–Smith, the original marriage between herself and the decedent was never dissolved and neither party ever sought to dissolve the union. *See* Lane–Smith Affidavit ¶ 5.

## C. Defendant/Counter–Plaintiff Lane Smith's Application for Benefits under the Detroit Diesel Corporation Benefit Plans.

The parties are in agreement that Lane–Smith never signed a form consenting to a change in beneficiary. Moreover, Lane–Smith testifies that she was never asked to sign such a form. *See* Affidavit 10 & 11. On November 25, 1996, Lane–Smith completed a distribution due to death or quali-

1. According to plaintiffs, John Smith, Jr. was accompanied by his mother, the *first* ex-wife of decedent, but who makes no claim to any of the benefits at issue. Furthermore, since John L. Smith, Sr.'s death DDC has learned that following decedent's marriage to John Jr.'s mother, decedent married Alice F. Smith (wife 2), who died sometime in 1987.

fied domestic relations request form for the DDC Hourly Employee Savings Plan. According to Lane Smith, plaintiffs never informed her of the plan provisions affecting her claim nor did they request any additional information from her. *See* Lane–Smith Affidavit ¶ 17. In addition, plaintiffs allegedly never informed Lane–Smith of any administrative remedies available to her. *See id.* ¶ 18.

On November 18, 1997, the Metropolitan Life Insurance Company (MetLife) declared Lane–Smith to be the "eligible survivor" of decedent and thus eligible to receive benefits under the DDC Survivor Income Benefits Plan. *See* Letter from MetLife to Lane–Smith, attached as Exh. 5 to Defendant/Counter–Plaintiff's Brief in Support. According to Lane–Smith, this determination was made in the face of competing claims between Lane–Smith and defendant Spivey on the basis of the surviving spouse status. On March 16, 1998, Lane–Smith began receiving those benefits. *See* Lane–Smith Affidavit ¶ 14.

### D. The Relationship Between Defendant Juanita Michelle Spivey and Decedent John L. Smith, Sr.

Juanita Michelle Spivey met decedent in 1990, began dating, and the two were purportedly married on September 19, 1991 in Toledo, Ohio. *See* Marriage Record, attached as Exh. A to Defendant Spivey's Brief in Support of Motion for Summary Judgment. According to Spivey, she and decedent then lived together as purported husband and wife in the Detroit area until decedent's death in 1996. Spivey claims to have had no knowledge of the existence of any marital relationship between Patricia Lane–Smith and decedent. *See* Affidavit of Juanita Spivey, attached as Exh. D to Defendant Spivey's Brief in Support of Motion for Summary Judgment.

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judg-ment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluating a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *See U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing genuine triable issue. Fed.R.Civ.Proc. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,*

> [t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is

not significantly probative, summary judgment may be granted. 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## IV. ANALYSIS

**A. Which defendant, Patricia Lane–Smith or Juanita Michelle Spivey, was the legal spouse of decedent John L. Smith at the time of his death on November 11, 1996?**

The crucial issue upon which the claims of the parties depend is which defendant, Patricia Lane–Smith or Juanita Michelle Spivey, was the legal spouse of decedent at the time of his death on November 11, 1996. Resolution of this issue will determine the rights of the two competing claimants in this case because the DDC benefit plans in which John L. Smith Sr. was enrolled provide for certain benefits to be paid to the surviving spouse of a participant upon the death of that participant. In deciding the issue, the Court will examine all the evidence submitted thus far by the respective parties, and will apply the appropriate legal rules relating to determining the validity of a marriage.

■ At the outset, it is important to note that the three benefit plans at issue— the DDC Hourly–Rate Employees Pension Plan, the DDC Health Care Program For Hourly Employees, and the DDC Personal Savings Plan for Hourly–Rate Employees—all qualify under ERISA as either an employee pension benefit plan or as an employee welfare benefit plan. *See* 29 U.S.C. § 1002(1) & (2)(A). Generally speaking, ERISA has broad preemptive effect on otherwise applicable state law. *See* 29 U.S.C. § 1144 (providing that ERISA "shall supersede any and all State laws insofar as the may now or hereafter relate to any employee benefit plan....") The Supreme Court, however, has held that Section 1144 was not intended to preempt areas of traditional state regulation. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). It is well-settled that laws relating to marriage and divorce are areas traditionally regulated by state authority, and thus are not subject to ERISA preemption. *See Bond v. Trustees of STA–ILA Pension Fund,* 902 F.Supp. 650, 654–55 (D.Md.1995); *Cartledge v. Miller,* 457 F.Supp. 1146, 1154 (S.D.N.Y.1978). Accordingly, this Court will look to state law in determining the validity of the marriages in the instant case.

Defendant Lane–Smith argues that defendant Spivey's purported marriage to decedent in 1991 was invalid because Michigan law provides that no marriage is valid if either of the parties has a living spouse, unless the previous marriage has been dissolved. *See* M.C.L. § 551.5 (stating that "[n]o marriage shall be contracted whilst either of the parties has a former wife or husband living, unless the marriage with such former wife or husband, shall have been dissolved"). According to Lane–Smith, since she had lawfully married in California in 1988 and is still alive, these facts serve to nullify the subsequent marriage between decedent and Spivey. Lane–Smith further points to Michigan statutory law providing that an original certificate or certified copy of the original certificate of marriage is presumptive evidence of the marriage. *See* M.C.L. § 600.2132. *Lane–Smith has presented the Court with such a certified copy of her marriage certificate. See* County of Solano, State of California Certificate of Registry of Marriage No. 869, attached as Exh. 5 to Defendant/Counter–Plaintiff's Brief in Support.

Defendant Spivey argues, on the other hand, for the application of the long-held and well-recognized legal principle that a ceremonial marriage is presumed to be valid. *See Doertch v. Folwell Engineering Co.,* 252 Mich. 76, 78, 233 N.W. 211 (1930); *In re Adams' Estate,* 362 Mich. 624, 625, 107 N.W.2d 764 (1961). Under Michigan case law, a second marriage only becomes invalid when the presumption of validity is rebutted by clear and convincing evidence that the first marriage has not been legally dissolved. *See In re Pope Estate,* 205 Mich.App. 174, 175, 517 N.W.2d 281 (1994); *Beaudin v. Suarez,* 365 Mich. 534, 536, 113 N.W.2d 818 (1962). According to Spivey, Lane–Smith has failed to rebut the established presumption, and therefore her claim must fail.

■ Before entering into a further discussion of the arguments of the parties, the Court must first determine which state's law to apply. Defendant Lane–Smith maintains that Ohio law—the law of the jurisdiction where the Spivey–Smith marriage was allegedly performed—should be applied to determine the validity of that purported marriage. As the Michigan Supreme Court has held, when examining the validity of a marriage solemnized outside the state of Michigan "[t]he validity of the ceremonial marriage...is to be tested by the law of that state." *In re Osborn's Estate,* 273 Mich. 589, 591, 263 N.W. 880 (1935). This choice of law rule is further supported by other cases wherein Michigan courts have held that the validity of a marriage is to be decided by the *lex loci contractus* or "the law of the place where the contract is made." *See Noble v. Noble,* 299 Mich. 565, 568, 300 N.W. 885 (1941)(holding that a marriage contracted in another state can be annulled only upon grounds which rendered it void or voidable under the *lex loci contractus;* a marriage valid where contracted will be recognized as valid in Michigan); *see also Toth v. Toth,* 50 Mich.App. 150, 212 N.W.2d 812 (1973). This rule is to be applied even in cases such as this one where both parties

to the marriage at issue are residents of the state of Michigan. *See Noble,* 299 Mich. at 566, 300 N.W. 885. The Court therefore need not enter into a complex choice of law analysis, as defendant Spivey urges, given the clear and well-settled precedent involving determining the validity of foreign marriages. Accordingly, the Court will apply Ohio law to determine the validity of the Spivey–Smith marriage, since it is undisputed that the ceremony in question occurred in Toledo, Ohio. *See* Certified Copy of Marriage Record, attached as Exh. 2 to Lane–Smith's Brief in Opposition to Defendant Spivey's Motion.

■ Under Ohio statutory law, just as in Michigan, a marriage is not valid if either of the parties has a living spouse and the previous marriage to that spouse has not been dissolved. *See* Ohio Rev. Code Ann. § 3101.01 (providing that "[m]ale persons of the age of eighteen years, and female persons of the age of sixteen years, not nearer of kin than second cousins, and not having a husband or wife living, may be joined in marriage"); *see also Darling v. Darling,* 44 Ohio App.2d 5, 335 N.E.2d 708, 710 (1975)(holding that "[a] bigamous marriage is void *ab initio* and of no legal purpose. One who is already married has no capacity to enter into another marriage contract, either ceremonial or common law"). In addition, under Ohio case law, the second marriage is invalid regardless of whether the innocent party, in this case Ms. Spivey, was aware of the preexisting marriage. *See State v. Wagoner,* 88 Ohio Law Abs. 218, 182 N.E.2d 328, 329 (Ohio App.1961). In Ohio, just as in Michigan, there is a presumption in favor of the validity of the second marriage. However, after the first spouse produces evidence of the preexisting marriage, Ohio law *shifts the burden* to the alleged second spouse to prove dissolution of the first marriage. In placing the burden on the second wife, the Ohio Supreme Court reasoned as follows:

> [i]t would seem to be a more reasonable doctrine to require the burden of proof to be placed upon the second wife, be-

cause it was not possible for the first wife to have followed her recreant husband all over the world in order to prevent another marriage of an unlawful nature, while it was within the power of the second wife to have made inquiry or to have insisted upon some information concerning Plumsteel's [i.e., the husband's] antecedents.

*Industrial Comm. of Ohio v. Dell,* 104 Ohio St. 389, 135 N.E. 669, 674 (1922).

■ Applying the above-discussed rules, Lane–Smith having presented clear and convincing evidence that she lawfully married the decedent in California in 1988, under Ohio law the burden is now shifted to *defendant Spivey* to show that Smith's prior marriage to Lane–Smith had been in some way dissolved. Spivey has failed to produce any evidence tending to show that the prior marriage had been dissolved. On the contrary, Lane–Smith has put forth some evidence tending to show that she and decedent had never divorced. *See* Exh. 5 to Defendant/Counter–Plaintiff's Brief in Support. In a letter dated November 18, 1997, from MetLife to Lane–Smith regarding the latter's entitlement to benefits from decedent's Survivor Income Benefits Plan, the insurance company stated:

> [a]s explained in our April 17, 1997 letter, we have received information indicating that John L. Smith, Sr. married another person [i.e., Spivey] in 1991, after he married you in 1988. *Our own investigation,* as well as the information provided by yourself [Lane–Smith] and the adverse-claimant [Spivey] has *failed to provide any evidence that John L. Smith, Sr. ever divorced you prior to his purported marriage to this other person.* Consequently, in the absence of evidence to the contrary, we must consider his later purported marriage *to be invalid* and have determined that you are John L. Smith, Sr.'s "Eligible Survivor" as defined in the plan.

*See id.* (emphases added).

Another telling piece of evidence supporting Lane–Smith's position is the marital history of John L. Smith, Sr. contained within decedent's Ohio marriage certificate. *See* Exh. 4 to Defendant/Counter–Plaintiff's Brief in Support. In this certificate, under "Groom's Marital History," Mr. Smith noted that he was divorced from one Alice Smith on December 17, 1986. However, Mr. Smith failed to indicate any divorce from defendant Lane–Smith who, as the record indicates, he had lawfully married in California in 1988. Decedent's failure to list a divorce on a subsequent marriage certificate such as this one has been held to present "conclusive evidence" that no such divorce has occurred. *See Grabois v. Jones,* 1998 WL 158756, *4 (S.D.N.Y. Apr.3, 1998).

Nevertheless, defendant Spivey opines that "there must be some evidence showing that the second spouse [i.e. Spivey] was not acting in good faith or with an honest belief as to the validity of her marriage at the time she entered into it." *See* Defendant Spivey's Brief in Support of Motion, p. 7. Spivey however cites no case law to substantiate this assertion. Furthermore, it is clear under the case law discussed above that the burden, at this point, is not on Lane–Smith to prove the state of mind of Spivey, but rather on Spivey to show that the prior marriage has been dissolved. Whether or not Spivey had an honest belief as to the *bona fides* of her marriage with decedent is not material to the inquiry. *See Wagoner,* 182 N.E.2d at 329 (holding that whether a woman knew a man was married was immaterial; if such man was married at the time he started living with such other woman, he had no capacity to enter into a marriage contract with her, common-law or otherwise).

■ Defendant Spivey further advances an estoppel argument, seeking to bar Lane–Smith from asserting her marital rights. Spivey argues that since Lane–Smith knew of decedent's subsequent mar-

riage in 1991, and allegedly "did nothing but confront the decedent, at a time when they were living apart, and apparently had very little contact in light of the destruction of the Philadelphia [street] address." *See* Defendant Spivey's Brief in Support of Motion, p. 7. In Lane–Smith's affidavit, she states that "[w]hen I became aware of the Decedent's purported marriage to Ms. Spivey, the Decedent informed me that the marriage was not legal and that I was still his legal spouse." Lane–Smith Affidavit ¶ 8. Lane–Smith also testifies that "[t]he Decedent and I were in frequent physical, written, and telephone contact until his death." *Id.* ¶ 9.

As authority for the estoppel argument, defendant Spivey relies upon *In re Pope Estate,* 205 Mich.App. 174, 175, 517 N.W.2d 281 (1994). However, in that case the court held that the first wife was *not* estopped from asserting her spousal rights regardless of any suspicions or knowledge concerning the second marriage. *Id.* at 177–78, 517 N.W.2d 281. The case cited in *Pope* as standing for the estoppel principle is *In re Williams Estate,* 164 Mich.App. 601, 417 N.W.2d 556 (1987). In *Williams,* estoppel applied because decedent's former wife "had deserted him and had married another without bothering to divorce him." *Pope,* 205 Mich.App. at 178, 517 N.W.2d 281 (citing *Williams,* 164 Mich. App. at 608–609, 417 N.W.2d 556).

The instant case is distinguishable from *Williams* for several reasons. First, Lane–Smith never remarried. Second, in *Williams* the former wife kept silent when the decedent married again for the fourth time after the death of his third wife. *Id.* Furthermore, during the intervening years she kept "consistent social contact" with *both* the decedent *and* his fourth wife until

his death. *See id.* In the case at bar, there is no evidence to suggest a pattern of social contact between Lane–Smith and Spivey, despite Lane–Smith's admission that she had contact with decedent after his purported marriage in 1991. Furthermore, according to defendant Lane–Smith's affidavit testimony, she did not "keep silent," but rather confronted John L. Smith Sr. about rumors concerning his marriage to Spivey and was told "that the marriage was not legal and that [Lane–Smith] was still his legal spouse." *See* Lane–Smith Affidavit ¶ 8; *see also* Lane–Smith Deposition, p. 18.

For the reasons discussed above, the Court finds that defendant Patricia Lane–Smith was the legal spouse of decedent John L. Smith, Sr. at the time of his death on November 11, 1996, and that Lane–Smith is *not* estopped from asserting her marital rights. There is no genuine issue of material fact and no need for a trial to proceed. Defendant Lane–Smith is entitled to judgment as a matter of law, as the spouse entitled to benefits under the DDC benefit plans.

It is also important to note that defendant Lane–Smith *never* waived her rights to decedent's benefits. Pursuant to ERISA, 29 U.S.C. § 1055(c)(2)(A), the rights of a surviving spouse may be waived if the employee so elects *and if* the spouse consents to such a waiver in writing.[2] However, this situation is not before the Court. No party has put forth any evidence that Lane–Smith ever consented to waive her rights under these plans. On the contrary, she has submitted her uncontroverted testimony that she never submitted a consent form, nor was she ever asked to submit one.

**2.** ERISA provides for an exception to this rule requiring spousal consent under the following conditions:

> "it is established to the satisfaction of a plan representative that the consent required...may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other

circumstances as the Secretary of the Treasury may by regulations prescribe."
29 U.S.C. 1055(c)(2)(B); *see also Grabois v. Jones,* 1998 WL 158756 (S.D.N.Y. Apr.3, 1998). In the instant case, this exception is inapplicable because there has been no showing that Lane–Smith could not be located or that she is now unable to be located.

■ As an additional matter, defendant Spivey argues in the alternative that *even if* it is adjudged that Lane–Smith is entitled to decedent's benefits, Spivey should still receive an equitable division of the proceeds. As authority for a partitioning of benefits, Spivey cites ERISA, 29 U.S.C. § 1132, which provides that a civil action may be brought by a plan participant, beneficiary, or fiduciary

> to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3)(emphasis added); *see also Varity Corp. v. Howe*, 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995). Based on this provision, defendant Spivey contends that the Court "has available to it several options." For example, Spivey suggests dividing the benefits pro rata or making an equitable division based on the number of years that the respective parties were purportedly married to decedent.

Defendant Spivey's equitable division argument is flawed for several reasons, and the Court refuses to grant such relief. First, the benefit plans at issue provide that benefits be awarded to "a spouse" or "the surviving spouse" of decedent, and make no provision for multiple spouses. *See* Exhs. F, G, and H to Plaintiffs' Brief in Opposition to Defendants' Cross Motions. The relief requested by Spivey would therefore require plaintiffs to provide benefits not authorized by the plans. Furthermore, as plaintiffs correctly point out, such an award would engender grave practical difficulties given the fact that the amounts payable under the terms of the Pension Plan are subject to an annuity dependent on the age and life of the spouse. In addition, defendant Spivey is unable to cite any case law in any jurisdiction holding that such an equitable division is proper in a case such as the present one involving multiple spouses. Accordingly, this Court will deny defendant's request to partition the proceeds.

**B. Whether Defendant/Counter-Plaintiff Patricia Lane Smith is entitled to costs and attorney's fees incurred in responding to the above-entitled action.**

■ Defendant Lane–Smith further argues that she is entitled to costs and attorney's fees incurred as a result of plaintiffs' bringing the instant interpleader action. In support of this position, Lane–Smith relies on ERISA, which provides that in an action by a plan participant, beneficiary, or fiduciary, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. 1132(g)(1). In addition, the U.S. Court of Appeals for the Sixth Circuit has delineated five factors to be applied in determining whether an award of costs and attorney's fees is appropriate in a given case. *See Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301 (6th Cir.1991) (citing *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985)). These five factors are as follows:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* There has been no conclusive ruling as to the relative importance of each of these five factors. However, it has been held that no factor is dispositive. *See Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir.1996).

With respect to the first *King* factor, the alleged bad faith on the part of plaintiffs, defendant Lane–Smith argues that plain-

tiffs issued neither a denial nor an award of benefits in response to her claim. Instead, plaintiffs' brought the instant interpleader action forcing defendant to defend her claim in federal court. According to Lane–Smith, this demonstrates a "blatant disregard for the administrative procedures required under ERISA." *See* Defendant/Counter–Plaintiff's Brief in Support, p. 13.

In response, plaintiffs contend that they did not act in bad faith because they do not have the discovery mechanisms which have been employed by both defendants in this case. Plaintiffs further argue that the legal determination as to the identity of the surviving spouse was not ascertainable due to prior cases involving Detroit Diesel Corporation involving multiple wife scenarios in which the second wife was held to be the appropriate beneficiary. *See Detroit Diesel Corp. v. Bonny Cope* (unpublished), Case No. 97–701622–CZ (Wayne Co. Cir. Ct. Nov. 25, 1997); *see also Estate of Cope* (unpublished), Case No. 96–566808–IE (Wayne Co. Prob. Ct. July 14, 1997). The probate court in *Cope* followed *Williams*, discussed *supra*, in finding that the former wife was estopped from attacking the validity of the subsequent marriage. See *Estate of Cope*, p. 5.

The Court finds that the first element of the *King* test has not been satisfied. Plaintiffs were justified in seeking judicial relief in ascertaining the correct beneficiary of decedent's benefit plans. Given the complexity of the legal issues, it was not unreasonable for plaintiffs to postpone a decision on whether to deny Lane–Smith's claim until after a judicial determination had issued.

With respect to the second factor, it is clear that plaintiffs are in a position to satisfy an award of attorney's fees, although this is not a dispositive factor. The third factor is also satisfied, in that a deterrent effect would result from imposition of fees in a case such as this one. As to the fourth factor, the Court is not convinced that Lane–Smith sought to confer a common benefit on all potential beneficiaries. Plaintiffs argue that they had all the parties' interests in mind by initiating the instant interpleader action and seeking to resolve the significant legal question regarding application of these ERISA benefit plans. The Court finds that the fourth factor reflects more favorably on plaintiffs than on defendant Lane–Smith, especially considering that initially DDC was considering four distinct claims: that of decedent's son, daughter, as well as the two defendants presently before the Court. Lastly, the Court must consider the relative merits of the parties' positions. While the Court has determined that defendant Lane–Smith possessed a meritorious claim, this is not tantamount to asserting that the other claimants lacked colorable claims. This is especially true given the fact that defendant Spivey was, as far as she was concerned, decedent's wife and also given the fact that decedent had expressly named his son, John Smith Jr. as his sole beneficiary with respect to the DDC Personal Savings Plan.

Weighing all the aforementioned factors, the Court concludes that costs and attorney's fees should *not* be taxed against plaintiffs. Rather, all parties will be directed to bear their own costs and attorney's fees in accordance with this Court's finding that the instant action was initiated in good faith and in the best interests of all the various potential claimants.

### C. Whether Defendant/Counter–Plaintiff Patricia Lane Smith is entitled to prejudgment interest

Defendant Lane–Smith claims that she is entitled to prejudgment interest from the date she filed her claim with the Plan Administrator. The Sixth Circuit has held that beneficiaries of pension plans have a right to prejudgment interest on benefits wrongfully withheld by plan administrators. *See Wells v. U.S. Steel and Carnegie Pension Fund*, 76 F.3d 731, 738 (6th Cir.1996); *Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268, 270 (6th Cir.

1990). Courts have reasoned that without the awarding of prejudgment interest, any recovery by a beneficiary would fail to make that beneficiary whole because it would fail to compensate the rightful beneficiary for the time the party was denied use of the money. *See, e.g., Short v. Central States, Southeast and Southwest Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.1984); *see also Sweet,* 913 F.2d at 270.

Plaintiffs do not specifically respond to Lane–Smith's request for prejudgment interest. However, their general response to Lane–Smith's request for costs and attorney's fees may arguably apply, i.e., that any delay in defendant Lane–Smith's receipt of funds was necessary due to the number of potential claimants and the uncertainty as to the proper eligible party. While this argument sufficed in protecting plaintiffs from liability for costs and attorney's fees, it must fail with respect to prejudgment interest. As the Sixth Circuit held in *Sweet v. Consolidated Aluminum Corp.,*

> [e]ven assuming *arguendo* that the Trustee was acting prudently in withholding the pension funds until December of 1985, it cannot be said that this did not confer a benefit on the trustee. Any additional time one gains, *rightfully or wrongfully,* in not having to submit payment of a sum of money owed another is without doubt a benefit. Moreover, the payee, plaintiff-appellant herein, has been deprived of the benefit of those payments. As was stated in [*Short v. Central States, Southeast and Southwest Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.1984)], "To allow the Fund to retain the interest it earned on funds wrongfully withheld from a beneficiary would be to approve of an unjust enrichment. Further, the relief granted would fall short of making the beneficiary whole because he has been denied the use of money which was his."

913 F.2d at 270 (emphasis added).

In light of the Sixth Circuit's holdings with respect to the availability of prejudg-

ment interest in cases where a claimant has been denied money owed, this Court finds an award of prejudgment interest in the instant case to be proper. Even though this Court has found that plaintiffs may have had justifiable reason in postponing payment, it is undeniable that plaintiffs have received some advantage from withholding the proceeds of John L. Smith Sr.'s benefit plans, and that Lane–Smith has been thereby disadvantaged as a result. Accordingly, defendant Lane–Smith will be awarded prejudgment interest to be computed from the date she filed her claim of benefits on November 25, 1996. The amount of such interest will be computed taking into account the amount of decedent's final paycheck, as well as any other benefits that should have been paid.

## V. CONCLUSION

In summary, the Court holds that defendant Lane–Smith was the legal spouse of decedent John L. Smith, Sr. at the time of his death, and, as such, should be awarded the proceeds of decedent's employee benefit plans. In addition, the Court will deny defendant Spivey's request for an equitable division of the proceeds, deny Lane–Smith's request to tax costs and attorney's fees against plaintiffs, and order plaintiffs to pay the prejudgment interest accrued since the date Lane–Smith filed her claim with plaintiff DDC on November 25, 1996.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant/counter-plaintiff Patricia Lane–Smith's motion for summary judgment is **GRANTED;**

**IT IS FURTHER ORDERED** that defendant Juanita Michelle Spivey's motion for summary judgment is **DENIED;**

**IT IS FURTHER ORDERED** that defendant/counter-plaintiff Patricia Lane–Smith's counterclaim is dismissed;

**IT IS FURTHER ORDERED** that defendant Juanita Michelle Spivey's request

for equitable division of proceeds is **DENIED**;

**IT IS FURTHER ORDERED** that defendant/counter-plaintiff Patricia Lane–Smith's request to tax costs and attorney's fees against plaintiffs is **DENIED**;

**IT IS FURTHER ORDERED** that defendant/counter-plaintiff Lane–Smith shall be awarded the proceeds of decedent's employee benefit plans, as well as decedent's final paycheck currently in the custody of plaintiff Detroit Diesel Corporation;

**IT IS FURTHER ORDERED** that plaintiffs shall pay to defendant/counter-plaintiff Lane–Smith prejudgment interest accrued since the date she filed her claim with plaintiff Detroit Diesel Corporation on November 25, 1996;

**IT IS FURTHER ORDERED** that plaintiffs shall pay to defendant/counter-plaintiff Lane–Smith post-judgment interest pursuant to 28 U.S.C. § 1961; a declaratory judgment in accordance with this order shall be entered forthwith.

**SO ORDERED.**