MOGK v. STROECKER.

1. MARRIAGE—PRESUMPTION OF VALIDITY—EQUITY DOES NOT FAVOR COLLATERAL ATTACK.

Where a marriage is solemnized in good faith, and the contracting parties live together as husband and wife for many years, have children and accumulate joint property, there is a strong presumption in favor of the validity of the marriage, and courts of equity will not look with favor upon a collateral attack thereon after the parties are dead.

As to presumptions flowing from marriage, see annotation in 34 A. L. R. 464.

2. EQUITY—LACHES—DILIGENCE REQUIRED.

Equity will not lend its aid to those who are not diligent in protecting their own rights.

3. SAME—UNEXCUSED DELAY OF 14 YEARS CONSTITUTES LACHES.

Unexcused delay of 14 years after the death of their father before children instituted a suit to obtain his property, on the ground of the invalidity of his second marriage, constitutes such laches as to bar their right to maintain said suit, especially where the delay resulted in the hearing not being had until after the death of said wife and her first husband, from whom she considered herself legally divorced, and whose testimony might have been helpful on the issue involved.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted June 12, 1928. (Docket No. 82, Calendar No. 33,821.) Decided July 24, 1928. Rehearing denied October 1, 1928.

Bill by Lottie Mogk and another against Edna Stroecker and another to establish title to land, and for an accounting. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Reuben Levin,* for plaintiffs.

*Robert O. Brown (Arthur G. Lesher,* of counsel), for defendants.

NORTH, J. The plaintiffs and the defendant Ida Voss are daughters of August C. Hoenighausen born of his marriage to Ida Hoenighausen. After living apart from each other for three years or more, August C. Hoenighausen secured a divorce from his wife. Thereafter, on April 18, 1888, he went through a marriage ceremony with Emily Garner; and the other defendant, Edna Hoenighausen Stroecker, was born of this union. Emily Garner had been previously married to William Garner. In February, 1883, she instituted divorce proceedings against William Garner

in the superior court of the city of Detroit. The records and files of that court (which have now been transferred to the circuit court of Wayne county) show that the defendant's default was entered and testimony was taken, and on March 24, 1883, a calendar entry was made by the clerk showing that a decree of divorce was granted on the grounds of extreme cruelty; but it appears from the proof herein that such a decree was not entered in the decree register of the court nor could it be found in the court files. It is evident, however, that Mrs. Garner believed she was legally divorced from her former husband. From the date of her marriage to August C. Hoenighausen (April 18, 1888) they continued to live together and cohabit as husband and wife until the date of his death, February 28, 1912. In July, 1904, they bought a house and lot in the city of Detroit from Carl Koch for $1,700. In the deed "August C. Hoenighausen and Emily Hoenighausen, his wife," were named as grantees; and they occupied this property as a home during the remainder of their lives.

This bill was filed by the plaintiffs as heirs at law of August C. Hoenighausen, deceased, and also by Ella V. Hoffman in the capacity of administratrix of his estate. The claim is that a valid marriage was never consummated between Emily Garner and August C. Hoenighausen because she was incapacitated to consummate such a marriage since she did not secure a decree of divorce from her former husband, William Garner. This, it is claimed, resulted in August C. Hoenighausen and Emily Garner Hoenighausen holding the property in question as tenants in common, and the one-half interest which vested in August C. Hoenighausen is claimed by the heirs and legal representative of his estate. This claim is resisted by the defendants and in their behalf it is asserted that the title to this property was held in entirety between August

C. Hoenighausen and Emily Garner Hoenighausen, and since the latter survived the former she became the sole owner of this property.    The circuit judge found in favor of the defendants and the plaintiffs have appealed.

We think the trial court made a just disposition of this case.    As indicated above, it appears from the record that the divorce proceedings which are now claimed to have been ineffectual were prosecuted by Mrs. Garner in 1883.    She was not married to Hoenighausen until five years later.    In the meantime she was not living with her husband, and there can be no doubt that they both understood they were legally divorced.    While this does not in and of itself alter their actual legal status, it does bear upon the equities of the present controversy.    When a marriage is solemnized in good faith, and the contracting parties live together as husband and wife for long years, have a child or children born to them, and accumulate joint property, courts of equity may well refrain from looking with favor upon a collateral attack which, after such persons are dead and gone, seeks to discredit their lives, to vest their property in persons other than they contemplated or desired, and to leave their offspring a child born out of wedlock.    There is and there should be a strong presumption in favor of the validity of such a marriage.    If we grant the divorce proceedings instituted by Mrs. Garner did not result in the actual entry of a final decree, the record even then is not at all conclusive.    Mr. Garner may have obtained a valid decree of divorce elsewhere and before Mrs. Garner's marriage to Hoenighausen.

This case forcibly indicates the wisdom of the law which requires diligence on the part of those who seek equitable relief.    We are not favorably impressed with the explanation here attempted as to why no steps were taken to enforce the alleged rights of these plaintiffs

during the 14 years which intervened between the death of August C. Hoenighausen in 1912 and the starting of this suit in 1926. It is alleged in the bill of complaint that the plaintiffs did not know the deed named August C. Hoenighausen and his wife Edna Hoenighausen as grantees but supposed it vested the title solely in him. This is not very, persuasive in the face of the fact that the deed had been a matter regularly of record in Wayne county for over 22 years before this suit was started. Another paragraph of the bill alleged there was an agreement between one of the plaintiffs and the deceased Emily Garner Hoenighausen that the latter "could live in the property during her lifetime;" but we find no proof in the record supporting this claimed agreement. In fact, we find no justification for these plaintiffs not having asserted whatever rights they claim in this property with reasonable promptness after their father's death in 1912. Their alleged title is by inheritance through him, and the issues of the case should have been presented to the court for adjudication before the death of Emily Garner Hoenighausen (1926), so that she could have spoken for herself, her child, and her property. This delay also resulted in the case not being heard until after the death of the former husband of Emily Garner Hoenighausen. It is obvious that his testimony would have been helpful and perhaps conclusive in determining the marital status of himself and Emily Garner Hoenighausen.

"Equity will not lend its aid to those who are not diligent in protecting their own rights." *Stone* v. *Stone,* 162 Mich. 319.

In its facts and in its equities this case is strikingly like and we think is controlled by *Allen* v. *Allen,* 47 Mich. 74. In that case there was a delay of about 11 years in filing the bill of complaint, and Justice COOLEY said there, as might well be said here:

"But in contemplation of equity they (the plaintiffs) waited altogether too long.     Their laches was gross, and it stands wholly unexcused."

The decree entered in the circuit court is affirmed, with costs to the appellees.

FELLOWS, WIEST, POTTER, and SHARPE, JJ., concurred.     FEAD, C. J., and CLARK, J., concurred in the result.     McDONALD, J., did not sit.