438 F.2d 1207
 JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, a Massachusetts Corporation, Plaintiff,
v.
Gertrude Taylor WILLIS, Defendant-Appellant, and
Margaret Willis, a/k/a Margarette Willis, in her individual capacity as guardian of Myra N. Willis and Chester E. Willis, Jr., et al., Defendants-Appellees.
 No. 20487.
 United States Court of Appeals, Sixth Circuit.
 February 15, 1971.
 
 E. R. Whinham, Jr., Detroit, Mich., for appellant.
 Bernard J. Fieger, Melvin J. Kates, Rothe, Marston, Mazey, Sachs & O'Connell, Detroit, Mich., for appellees as of record.
 Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.
 McCREE, Circuit Judge.
 
 
 1
 This appeal presents the question whether summary judgment should have been granted in favor of the children of Chester Willis and against Gertrude Taylor Willis, who claimed the proceeds of a life insurance policy as his widow. We determine that this disposition was erroneous and we reverse and remand.
 
 
 2
 In 1937, Chester Willis married Gertrude Taylor in East Carroll Parish, Louisiana. In 1955, Chester and Margaret Willis were pronounced husband and wife in a ceremonial marriage in Toledo, Ohio. No record of a divorce between Chester and Gertrude has been produced in this case. Chester died on December 22, 1964, from a stab wound inflicted by Margaret who later pled guilty to a charge of manslaughter.
 
 
 3
 Chester was insured under a group life insurance policy issued by the John Hancock Mutual Life Insurance Company to employees of the Ford Motor Company. Uncertain about who was entitled to the proceeds, John Hancock brought this interpleader action in the District Court and deposited $12,150 (the proceeds of the policy less funeral expenses) with the court.
 
 
 4
 Chester Willis had designated as the policy's primary beneficiary "Margarette Willis wife". However, as the District Court correctly ruled on motion for summary judgment, 312 F.Supp. 1320 (E.D.Mich.1970), she is barred from taking because she feloniously caused the death of her husband. Ohio State Life Ins. Co. v. Barron, 274 Mich. 22, 263 N. W. 786 (1935); McDuffie v. Aetna Life Ins. Co., 160 F.Supp. 541 (E.D.Mich. 1957), aff'd, 273 F.2d 609 (6th Cir. 1960). Under Michigan law, which is controlling here, Margaret's plea of guilty to the manslaughter charge is conclusive on the issue of her eligibility to receive the policy proceeds. See Turbessi v. Oliver Iron Mining Co., 250 Mich. 110, 229 N.W. 454 (1930); Austin v. United States, 125 F.2d 816, 819 (7th Cir. 1942).
 
 
 5
 The District Court next determined that the alternate beneficiary is entitled to the proceeds. The policy language provides that, in default of the named beneficiary, the proceeds shall "be paid to the wife or husband, if living; if not living, to the children who survive such employee, equally; * * *." Here, 13 children are claimed to have survived Chester Willis, and under the terms of the policy they are entitled to the proceeds unless Gertrude is held to be his "wife", since Margaret is disqualified from taking.
 
 
 6
 The District Court held that Chester Willis' use of the word "wife" in designating Margaret as primary beneficiary was conclusive in defining "wife" wherever that word appeared in other sections of the policy. 312 F.Supp. at 1321-1322. Clearly, we would seek to give effect to Chester's intent if we were trying to identify a beneficiary whom he designated. E. g., Chrysler Corp. v. Hardwick, 299 Mich. 696, 1 N.W.2d 43 (1942); Chrysler Corp. v. Gutt, 293 Mich. 420, 292 N.W. 354 (1940). However, there is no difficulty in ascertaining whom he intended: clearly, Margaret, whether his lawful wife or not, would take were she not ineligible under an unrelated rule of law.
 
 
 7
 But here, we are not concerned with a beneficiary designated by the insured, but with the identity of the beneficiary designated by a clause in the insurance policy, a preexisting agreement between the insurer and the group employer. See Aetna Life Ins. Co. v. Messier, 173 F. Supp. 90, 96-97 (M.D.Pa.1959).
 
 
 8
 The District Court erred, then, in saying that Chester's possibly erroneous description of Margaret as his "wife" places a gloss on that word whenever it appears in the policy. In interpreting contracts, words will be given their ordinary meaning, and the unambiguous intent of the contracting parties — Ford and John Hancock — was that "wife" should be understood to mean lawful wife. The precise question, then, is whether Gertrude was Chester's lawful wife and whether her status could be determined as a question of law on the motion for summary judgment.
 
 
 9
 The general rule is that any ceremonial marriage is presumed valid, but that its validity may be rebutted by evidence indicating that it was not lawfully entered into: thus the most recent ceremonial marriage is presumed to be valid over any preexisting marriage. In re Adams' Estate, 362 Mich. 624, 107 N.W.2d 764 (1961); Quinn v. Quinn, 4 Mich.App. 536, 145 N.W.2d 252 (1966). Accordingly, we would presume Margaret's marriage to have been valid unless there is evidence to rebut this presumption.
 
 
 10
 Here, there is such evidence. There is Gertrude's affidavit, in which she denies any knowledge of a divorce or other legal termination of her marriage to Chester. There is an affidavit from an Assistant Wayne County prosecutor that Chester, in a statement made to her three years after his marriage to Margaret, admitted that he had never been divorced from Gertrude. Although hearsay, this statement might be admissible as an admission against penal or pecuniary interest, inasmuch as it was made in response to a petition brought by Gertrude under the Uniform Reciprocal Enforcement of Support Act.
 
 
 11
 We conclude, therefore, that on this record there was a genuine issue of fact concerning the identity of Chester's widow and that the case in this posture was not suitable for summary disposition under Rule 56(c). S. J. Groves & Sons Co. v. Ohio Turnpike Comm., 315 F.2d 235 (6th Cir.), cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963). The material issue whether there had been a legal termination of the marriage between Chester and Gertrude could not have been resolved without a resolution of factual conflict. Accordingly, we hold that the District Court erred in granting the motion for summary judgment.
 
 
 12
 The judgment of the District Court is reversed, and the cause remanded to the District Court for further proceedings not inconsistent with this opinion.