RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DAIMLERCHRYSLER CORPORATION HEALTHCARE
BENEFITS PLAN; DAIMLERCHRYSLER GROUP
INSURANCE PROGRAM; DAIMLERCHRYSLER
CORPORATION; DAIMLERCHRYSLER-UAW PENSION
PLAN,

     *Plaintiffs-Appellees,*

  *v.*

ANN DURDEN,

     *Defendant-Appellant,*

RITA LORRAINE MARSHALL-DURDEN,

     *Defendant-Appellee.*

No. 05-1662

> 

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72189—Bernard A. Friedman, Chief District Judge.

Submitted: April 26, 2006

Decided and Filed: May 26, 2006

Before: MERRITT, MARTIN, and McKEAGUE, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Alan R. Kirshner, Toledo, Ohio, for Appellant. Jerry R. Swift, DEAN &
FULKERSON, Troy, Michigan, for Appellees.

  McKEAGUE, J., delivered the opinion of the court, in which MARTIN, J., joined.
MERRITT, J. (p. 10), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

  McKEAGUE, Circuit Judge. This appeal involves an interpleader action filed by a pension
plan seeking a declaration of which of two claimants is decedent, Douglas Durden's surviving
spouse. The district court granted summary judgment in favor of Rita Lorraine Marshall-Durden,
finding that Rita is Douglas Durden's "surviving spouse" and is entitled to surviving spouse

benefits. On appeal, the other claimant, Ann Durden, contends that the district court erred in applying Michigan substantive law to determine which claimant is the surviving spouse. She argues that Ohio law applies and that under Ohio law she is entitled to the benefits as the surviving spouse. For the following reasons, we conclude that Ohio law should have been applied and that under Ohio law Ann is the surviving spouse. Consequently, we reverse the decision of the district court.

## I. BACKGROUND

On September 16, 1966, Douglas Durden married Ann Linzy in Toledo, Ohio. According to Ann, she and Douglas lived together in Toledo from 1966 to 1982, but because Douglas was abusive, she moved to Memphis, Tennessee, in April 1982. Douglas and Ann had two children together, Douglas M. Durden, Jr., born February 6, 1967, and Freeman Richard Durden, born April 11, 1968.

In 1972, Rita Lorraine Marshall started a romantic relationship with Douglas. Ann says that she and Douglas were still living together at the time, and that they continued to live together until April of 1982. Douglas and Rita had a son who was born in 1975. On November 30, 1985, Douglas and Rita were married in Las Vegas, Nevada. On the marriage certificate, Douglas swore that his previous marriage was legally terminated in 1971 in Memphis, Tennessee. The divorce records from Shelby County, Tennessee (where Memphis is located) do not contain any indication of such a divorce. Moreover, Rita testified that when she began dating Douglas in 1972 she was aware he was still married to Ann. However, Rita also stated that before they were married in 1985 Douglas told Rita that Ann had divorced him. After their wedding in 1985, Rita and Douglas lived together as purported husband and wife in Toledo until Douglas's death in 2003. They adopted a son, Nikita Oliver, in 1988.

Ann avers that she never divorced Douglas, nor was she ever made aware of any divorce proceeding that he initiated. Ann filed for divorce on February 16, 1972, but that case was dismissed on November 2, 1972. Ann's search of the divorce records of the counties in which she or Douglas have lived supports her statement. The following searches failed to turn up any evidence of a divorce between Ann and Douglas: 1) a search of the divorce records from Lucas County, Ohio (where Toledo is located) from 1972 to 2005; and 2) a search of the divorce records from Shelby County, Tennessee (where Memphis is located).

The degree of knowledge that each woman had of the other's marriage to Douglas is not entirely clear. Ann states that she had no knowledge of Douglas's marriage to Rita until after Douglas's death. Rita asserts that Ann did know Rita and Douglas were married because Ann's children visited their father at Rita and Douglas's home in Toledo. The extent of Rita's knowledge of Douglas's marriage to Ann is similarly unclear. Rita states that she believed that Douglas's marriage to Ann had been legally terminated and that she was never informed by Ann, Douglas, or any other person that Ann and Douglas were still married.

As an employee of DaimlerChrysler, Douglas Durden participated in the DaimlerChrysler Corporation-UAW Pension Plan ("the Plan") subject to the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 *et seq.* The Plan provides, among other benefits, a Widow's/Widower's benefit to his surviving spouse calculated pursuant to the terms of the Plan. In documents pertaining to the Plan, Douglas listed Rita as his dependant spouse. Douglas was also covered by the DaimlerChrysler Corporation Life and Disability Programs, which covered Douglas in the amount of $59,500 of life insurance and provided transition and bridge benefits to his surviving spouse. Douglas did not designate a beneficiary for the life insurance, and when no beneficiary is named, the surviving spouse is first in line of succession to receive the proceeds. The Plan provides a choice of law provision which provides that the Plan "shall be construed, governed

and administered in accordance with the laws of the State of Michigan except where otherwise required by Federal law."

Upon Douglas's death in October of 2003, the claim administrator for the DaimlerChrysler Corporation Life and Disability Programs, based upon the documents provided by Douglas, paid Rita $59,500 of life insurance proceeds. From the time of Douglas's death until May 2004, Rita was also provided healthcare benefits as Douglas's surviving spouse. The Widow's/Widower's benefit has not been paid by the Plan following Douglas's death. Because these benefits are being claimed by both Rita and Ann, health care benefits and transition and bridge benefits to Rita were suspended.

On June 14, 2004, DaimlerChrysler filed an interpleader complaint seeking a declaration as to which of the two claimants is Douglas's surviving spouse and, therefore, entitled to receive the health care benefits, transition and bridge benefits, life insurance proceeds, and the Widow's/Widower's benefit. Both Rita and Ann moved for summary judgment, each seeking a declaration that she is Douglas Durden's lawful spouse and therefore entitled to benefits. The district court held that the choice of law provision in the Plan controlled and applied Michigan law. Based on its application of Michigan law, the district court found that Rita was the surviving spouse and granted summary judgment in her favor. Ann timely appealed.

## II. ANALYSIS

### A.    Standard of Review

This court reviews an order granting summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005); *Valentine-Johnson v. Roche*, 386 F.3d 800, 807 (6th Cir. 2004). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Valentine-Johnson*, 386 F.3d at 807. Any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). Nevertheless, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter*, 385 F.3d at 689-90; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

### B.    Preemption

When Ann and Rita argued their cross-motions for summary judgment at the district court level, the dispute centered on the question of which state's law should be applied to determine which woman was Douglas's surviving spouse. On appeal Rita introduced a new issue into this case by arguing that ERISA preempts all state law. Rita points out that the Plan documents named her as Douglas's dependent spouse and argues that such a designation in an ERISA plan preempts any state law which would lead to a contrary conclusion.

A review of Rita's motion for summary judgment and the transcript of the hearing on that motion reveals that the preemption argument was never raised in the district court. In general, this

court will not review issues raised for the first time on appeal. *Barner v. Pilkington N. Am.*, 399 F.3d 745, 749 (6th Cir. 2005); *Lepard v. NBD Bank*, 384 F.3d 232, 236 (6th Cir. 2004). Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order. *Barner*, 399 F.3d at 749. The court will consider an issue not raised below only when the proper resolution is beyond doubt or a plain miscarriage of justice might otherwise result. *Lepard*, 384 F.3d at 236; *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003). This exception does not apply in this case.[1]

## C.    Choice of Law

The primary basis of Ann's appeal is her argument that the district court erred when it applied Michigan law to determine which claimant was Douglas's surviving spouse. According to Ann, Ohio law should have been applied instead. In determining which state's law applies in an ERISA case, this court's "analysis is governed by the choice of law principles derived from federal common law." *Med. Mutual of Ohio v. deSoto*, 245 F.3d 561, 570 (6th Cir. 2001). "In the absence of any established body of federal choice of law rules, we begin with the Restatement (Second) of Conflicts of Law. . . ." *Id.*

Ann argues that reference to the restatement is unnecessary because there is a body of federal common law dictating that the law of the state of the decedent's domicile is applied to determine which of two conflicting marriages was valid. *Metropolitan Life Ins. Co. v. Manning*, 568 F.2d 922, 926 (2d Cir. 1977); *Brinson v. Brinson*, 334 F.2d 155, 158 (4th Cir. 1964); *Grove v. Metropolitan Life Ins. Co.*, 271 F.2d 918, 919 (4th Cir. 1959); *Spearman v. Spearman*, 482 F.2d 1203, 1205 (5th Cir. 1973). Rita claims that these cases are inapposite because they are not ERISA cases. This argument is unpersuasive. The cases are part of the body of federal common law (although not binding on this court because they are from other circuits). There is not a different set of federal common law choice of law rules for every distinct underlying federal issue. Nevertheless, the cases Ann cites are unhelpful for a different reason. None of them addresses the issue faced here of whether a choice of law provision is enforceable in this type of case. Consequently, we turn to the restatement for direction.

The Restatement (Second) of Conflict of Laws, Section 187 provides the framework for determining whether a choice of law provision in a contract is given effect:

§ 187.  Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

---

[1]Even if considered on the merits, Rita's preemption claim would fail. ERISA provides that survivor's benefits cannot be paid to someone named in a plan who is not a surviving spouse unless the surviving spouse has signed a written, notarized consent form. *See* 29 U.S.C. § 1055(a), (c)(2); *Boggs v. Boggs*, 520 U.S. 833, 843 (1997); *Shields v. Reader's Digest Ass'n*, 331 F.3d 536, 542 (6th Cir 2003). There is no consent form in this case. Consequently, if Rita is not the surviving spouse, the Plan cannot effectively designate her as the beneficiary of survivor's benefits. Therefore, the provisions of ERISA itself make it necessary to determine which claimant is the surviving spouse without reference to the Plan documents.

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Rest. 2d Conflict of Laws § 187 (1971). Ann argues that this section does not apply because there is no issue about the rights and duties under a contract, but only an issue of which claimant is Douglas's surviving spouse. The fact that all parties agree that the benefits in question go to the surviving spouse does not mean that there is no issue regarding rights or duties under the Plan. On the contrary, the crux of this litigation is whether the Plan administrators are obligated under the Plan to pay benefits to Ann or Rita and whether Ann or Rita has the right under the Plan to receive survivor's benefits. The law applied to determine which claimant is the surviving spouse is applied for the specific purpose of determining rights and duties under the Plan. Since the Plan contains a statement of the parties' choice of law to govern the contractual rights and duties created by the Plan, we must look to section 187 to determine whether that choice is effective.

The first step of analysis under section 187 is to determine whether the contractual parties could have resolved the particular issue being litigated by an explicit provision in the contract. If they could have, then the choice of law provision is enforceable. Rest. 2d Conflict of Laws § 187(1). Under such circumstances, there are no exceptions. In this case, we must evaluate whether the Plan could have contained an express provision addressing the determination of which of two claimants is a surviving spouse and, therefore, entitled to survivor's benefits. ERISA provides that the terms of a plan alone cannot prevent survivor's benefits from being paid to the surviving spouse. 29 U.S.C. § 1055(a), (c)(2); *Boggs v. Boggs*, 520 U.S. 833, 843 (1997). While plan documents may designate someone other than the surviving spouse to receive such benefits *if the spouse has signed a written, notarized consent form*, the parties to the plan alone do not have the power to grant survivor's benefits to anyone who is not the surviving spouse under applicable law. Therefore, the parties to the Plan could not have resolved the issue of which claimant is entitled to Douglas's survivor's benefits by explicit provision in the contract.

A choice of law provision is usually still given effect even to determine issues which the parties could not have explicitly resolved in their contract. The only difference is that there are two exceptions where such a choice of law provision will not be given effect. The first is where "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." Rest. 2d Conflict of Laws § 187(2)(a). This exception clearly does not apply in this case. Among other things, the Plan is administered in Michigan and DaimlerChrysler has headquarters in Michigan. There was a reasonable basis to choose to apply Michigan law.[2]

---

[2] The comments to the restatement observe that this exception will rarely, if ever, apply as a practical matter because contracting parties rarely make a choice of law without a good reason. This exception is merely intended to preclude, for example, the application of "foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge." Rest. 2d Conflict of Laws § 187 cmt. f.

The second exception set forth in section 187(2) requires a more complex analysis. Under section 187(2)(b), a choice of law provision will not be enforced where (1) it would be would be contrary to a fundamental policy of the state whose law would otherwise be applied; and (2) the state whose law would otherwise be applied has a materially greater interest in the particular issue under consideration than the state named in the choice of law provision. The first step is to identify the state whose law would apply in the absence of the choice of law provision. The second step is to identify whether the application of Michigan law would be contrary to any fundamental policy of the otherwise applicable state law. This determination requires examining how each of the two states would resolve the dispute and the underlying policy reasons for each approach. The third step is to evaluate whether the state whose law would otherwise be applied has a materially greater interest in the determination than Michigan.

If the Plan did not contain a choice of law provision, this court would look to section 283 of the restatement which governs the law applicable to determining the validity of a marriage. Rita argues that section 188 would be the appropriate section because it governs the choice of law applicable to resolve issues regarding contractual rights and duties. She points out that in the past, this circuit has applied section 188 to determine an issue arising from an ERISA group health insurance plan. *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 570 (6th Cir. 2001). However, the *deSoto* case did not involve an issue of the validity of a marriage or any other status issue. The Restatement (Second) of Conflict of Laws contains chapters describing the appropriate choice of law analysis for major classes of claims including contract claims, tort claims, and property claims. Usually, as in the *deSoto* case, reference to the analysis for the particular type of claim is all that is required. However, the resolution of some legal issues is dependent upon the underlying status of the individuals involved. Three familial relationships which create such legally significant status are separately addressed in the restatement: marriage, legitimacy, and adoption. There is a distinct choice of law analysis for determining each type of status. Where a legal issue turns on a person's status, the choice of law issue is evaluated under the specific section related to that status regardless of the nature of the underlying legal issue. Rest. 2d Conflict of Laws § 187 cmt. a ("The rule of this Section [Validity of Marriage] is concerned with what law governs the validity of a marriage as such, namely what law determines, without regard to any incident involving the marriage, whether a man and a woman are husband and wife.") Consequently, although the underlying legal issue is this case is a contractual issue about rights and duties under the Plan, we must look to section 283 to analyze which state's law governs the determination of which claimant was legally married to Douglas at the time of his death.

Section 283 provides, in pertinent part, that "[t]he validity of a marriage will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the marriage. . . ." Rest. 2d Conflict of Laws § 283(1). This case concerns the validity of two marriages–Ann's and Rita's. Ohio has the most significant relationship to both marriages and to Ann, Rita, and Douglas. Ann and Douglas's marriage was solemnized in Ohio and both of them lived in Ohio the entire time they were living together as husband and wife. Although Rita and Douglas's marriage was solemnized in Nevada, the two of them lived together in Ohio from the time of their wedding in 1985 until Douglas passed away in 2003. While Ann moved to Tennessee after she left Douglas, Tennessee does not have any significant relationship to Ann and Douglas's marriage. Douglas worked in Michigan, but Michigan does not have any relationship to either Ann or Rita or either of the marriages. Ohio is the state with the most significant relationship to the spouses and both marriages. If the Plan did not contain a choice of law provision, Ohio law would have been applied to determine which marriage was valid at the time of Douglas's death.

The next step is to determine whether application of Michigan law to determine which claimant is the surviving spouse would be contrary to any fundamental policy of Ohio law. Under

Michigan law, there is a strong presumption of validity in favor of a later ceremonial marriage that is attacked on the ground that one of the parties was already married to another. *John Hancock Mut. Life Ins. Co. v. Willis*, 438 F.2d 1207, 1208 (6th Cir. 1971); *In re Estate of Adams*, 107 N.W.2d 764, 765 (Mich. 1961); *In re Estate of Pope*, 517 N.W.2d 281, 282 (Mich. App. 1994); *In re Estate of Williams*, 417 N.W.2d 556, 559 (Mich. App. 1987). This presumption is particularly strong where there are children born of the later marriage. *Adams*, 107 N.W.2d at 765-66. The presumption of validity may be rebutted by "clear and positive proof to the contrary." *Id.* at 766. That is, with "a showing of facts or circumstances which either may establish the validity or invalidity of the marriage conclusively or raise an issue to be determined upon [a] preponderance of the evidence." *Id.* However, the presumption is not rebutted by testimony of the first spouse that, to the best of her knowledge, her husband never attempted to procure a divorce from her and that she had never received or been served with divorce papers, *id.* at 766-67, or by testimony that a search was made in the county wherein decedent was known to have resided and no record of divorce was discovered, *Doertch v. Folwell Eng'g Co.*, 233 N.W. 211, 211-12 (Mich. 1930). The possibility exists that an absent spouse could have obtained a divorce elsewhere. *Williams*, 417 N.W.2d at 559 (citing *Mogk v. Stroecker*, 220 N.W. 730 (Mich. 1928)). The reasons behind the strong presumption in favor of the second marriage are the twin presumptions of the parties' innocence of bigamy and the officiating and licensing officers' regularity of action, and the twin public policy concerns of fostering respectability and protecting offspring from the taint of illegitimacy. *See, e.g., Adams*, 107 N.W.2d at 766.

Contrary to the rule adopted in Michigan, Ohio places the burden of proof on the second spouse to demonstrate that the first marriage was dissolved. *Industrial Com. of Ohio v. Dell*, 135 N.E. 669, paragraph 3 of the syllabus (Ohio 1922). The Ohio Supreme Court has stated its approach in the following terms:

> Where it is stipulated that both marriages have been lawfully solemnized, and the record is silent as to whether there has been a divorce of the parties to the first marriage, there is a presumption that the status of the parties to the first marriage continues, and the burden is upon the parties claiming the validity of the second marriage to overcome such presumption.

*Id.* Unsubstantiated testimony presented by the second wife that the first wife remarried is not sufficient to rebut the presumption. *Dikiy v. Lubeshkoff*, 1975 WL 182447 (Oh. Ct. App. Jan. 16, 1975). Neither is a person's statement on a second marriage certificate that he had divorced his previous wife. *Dibble v. Dibble*, 100 N.E. 2d 451, 461-62 (Oh. Ct. App. 1950). Ohio embraces the presumption in favor of the first wife based on the reasoning that the best course of action is to place the burden on the second wife to obtain sufficient information at the time of her marriage that her prospective spouse had effectively dissolved any previous marriages. The Ohio Supreme Court considered the presumption employed by Michigan (and a majority of states), but rejected it after careful consideration, making the following observation:

> It seems much better to insist that a little ordinary business prudence should enter into a prospective marriage, and that, when a woman does not insist upon knowing something about the past life of the prospective bridegroom, it is more reasonable that she should take the consequences of her imprudence than that the consequences should be visited upon a perfectly innocent lawful wife, who had no knowledge and no means of knowledge that the second marriage was about to occur.

*Dell*, 352 N.E. at 674.

Under Michigan law Rita's marriage is presumed to be valid and Ann has the burden of proving that her marriage was never dissolved. That burden is substantial. Ann's own testimony that she never obtained a divorce, her testimony that she was never served with divorce papers, and her unproductive search of divorce records in the counties where she and Douglas resided is not sufficient to overcome that presumption. Ohio law evidences a policy of protecting individuals like Ann from bearing the burden of proof, and instead protects them while requiring individuals in Rita's position to obtain concrete proof of a prospective spouse's availability or bear the risk of not ascertaining that information. Application of Michigan law would be contrary to this policy. Moreover, the policy is fundamental. The mere fact that the result would be different is not enough to demonstrate that a fundamental policy is at issue. *See* Rest. (Second) Conflict of Laws § 187 cmt. g ("The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.") However, this case involves more than simply two legal systems which happen to reach a different result. Instead, the different outcome is the result of conflicting value judgments about which party in this situation deserves protection. The restatement's commentary states that a policy which protects people from the oppressive use of superior bargaining power is one example of a fundamental policy. Rest. 2d Conflict of Laws, cmt. g. Ohio's policy at issue here protects individuals from having their marital rights cut off by the unilateral, and usually unknown, actions of their spouse. Both types of polices recognize vulnerabilities and choose to protect individuals from consequences they are ill-prepared to prevent on their own. Ohio's presumption in favor of the continuation of the first marriage demonstrates a fundamental policy. Application of Michigan law pursuant to the choice of law provision would be contrary to that fundamental policy.

The final step of the section 187(2)(b) analysis is to determine whether Ohio has a materially greater interest than Michigan in determining whether Ann or Rita is Douglas's surviving spouse. Michigan has some interest in the determination of rights and duties under the Plan. The Plan was negotiated, executed, and administered in Michigan. DaimlerChrysler is headquartered in Michigan, as is the union which negotiated the Plan on behalf of the employees. However, none of the Michigan entities involved in this litigation has an interest in which claimant prevails. The Plan will pay out the same amount of money regardless of to whom it is ultimately paid. Michigan does not have any interest in whether Ann's or Rita's marriage is declared valid. Neither marriage relationship has any connection to the state of Michigan. Yet Ohio has a very significant interest in the determination of the validity of those relationships. Ann's marriage was solemnized in Ohio and her husband was an Ohio resident when he married another woman. Although Ohio's interest in protecting Ann is arguably diminished somewhat by the fact that Ann is now a Tennessee resident, Ohio still has some interest in protecting an individual who entered into a marriage contract in Ohio and lived as an Ohio resident for several years thereafter. Furthermore, Rita resided with Douglas in Ohio from their wedding until his death. Ohio has a substantial interest in imposing on its residents its policy of requiring individuals to obtain sufficient documentation of a prospective spouse's availability or suffer the consequences of their failure to do so. Under the circumstances of this case, Ohio has a materially greater interest than Michigan in having its law applied to determine which claimant is Douglas's surviving spouse.

If there was no choice of law provision in the Plan, Ohio law would apply to determine which claimant is the surviving spouse. Ohio has a fundamental policy of protecting married persons from the consequences of their spouse entering into a subsequent marriage where it is not clear whether the prior marriage was dissolved. Enforcing the choice of law provision and applying Michigan law would be contrary to this fundamental policy. Finally, Ohio has a materially greater interest than Michigan in the determination of which woman is entitled to receive the survivor's benefits. Consequently, this is one of the rare cases which fits within the exception described in section 187(2)(b). The district court erred when it enforced the choice of law provision and applied Michigan law.

In coming to the forgoing conclusion, we are mindful of the considerable importance of upholding contractual parties' expectations. In the ERISA context this principle is even more important because it adds another layer of uniformity– a vital component of the ERISA framework. Numerous issues which would otherwise be decided by state law are preempted by ERISA for the specific purpose of providing uniformity. *E.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *Fort Halifax Packing v. Coyne*, 482 U.S. 1, 9 (1987); *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 56 (1987). This uniformity allows for a much more efficient and streamlined claim administration process. Enforcing choice of law provisions in ERISA plans takes the object of uniformity one step further by ensuring that all issues not preempted by federal law will be resolved by application of the chosen state's law. In general, this too will add certainty to the claim administration process leading to more efficiency and less litigation. However, failing to enforce a choice of law provision does not necessarily undermine the goals of uniformity (e.g., efficiency and reduced litigation). For example, in this case the only difference in applying Michigan law and Ohio law is which presumption applies. Applying the Michigan presumption would not make the claim administration process more efficient or prevent the need for litigation. Although refusing to enforce the choice of law provision does not promote the goal of uniformity, promoting uniformity under these circumstances would not accomplish anything. Therefore, the importance of uniformity in the ERISA context, while undeniable, is not a sufficient basis for departing from the choice of law principles set forth in the Restatement (Second) of the Conflict of Laws.

## D.     Application of Ohio Law

The final question in this case is whether Rita has submitted enough evidence to rebut the presumption under Ohio law and create a genuine issue of material fact. Douglas swore on his 1985 marriage certificate that he had obtained a divorce from Ann. However, under Ohio law, a husband's self-serving statement on a marriage certificate that a previous marriage was dissolved is not sufficient to overcome the presumption that the first marriage continued undissolved. *Dibble v. Dibble*, 100 N.E. 2d 451, 461-62 (Oh. Ct. App. 1950). Moreover, Douglas stated on the marriage certificate that he divorced Ann in 1971 in Memphis, Tennessee. Yet the divorce records from Memphis contain no record of a divorce, and Rita testified that in 1972 she knew Douglas was still married to Ann. Rita also introduced testimony that some time prior to 1996 Ann remarried. This is also insufficient to rebut the presumption in favor of the first marriage. *See Dikiy v. Lubeshkoff*, 1975 WL 182447 (Oh. Ct. App. Jan. 16, 1975). In light of the lack of evidence to support her argument that Ann and Douglas were divorced before her marriage to Douglas, Rita's own understanding that they were divorced is also insufficient to overcome the presumption. Based on the record before this court, Ann is entitled to judgment as a matter of law that she is Douglas Durden's surviving spouse.

## III.  CONCLUSION

For the foregoing reasons, we REVERSE the order of the district court and REMAND for proceedings consistent with this opinion.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.   The Conflicts Restatement, relied on by my colleagues, does not take into account the overriding purpose and policy of uniformity behind the ERISA statute or behind the interpretation of ERISA benefits contracts.  I, therefore, think that the Conflicts Restatement is of marginal value in the interpretation of this particular contract provision calling for the application of Michigan law.  Moreover, the Conflicts Restatement provisions themselves are not entirely clear and are open to several interpretations leading to varying results in the resolution of this dispute.  Instead of applying a uniform governing law to the ERISA benefits an employee and his family receive, the benefits will be distributed under the Court's view according to a calculation based upon where the marriage occurred, marital domicile, etc. — a place that could be anywhere in the world for employees of a global automobile company.

Our Court imposes on this ERISA transaction the law of the place of the first marriage and the home of the decedent (Ohio) instead of the law of the place of the second marriage (Nevada) or the domicile of the first wife (Tennessee) or the law explicitly chosen by the parties for the interpretation of their benefits contract (Michigan).  If I were going to count up the "contacts" with my colleagues,  I would find just as many in favor of an application of Michigan law as Ohio law.  The decedent worked in Michigan; the court below sits in Michigan; the money to be paid comes from the Michigan employer as a result of a contract formed and performed in Michigan.  But I do not think that counting up "contacts" and state "interests" and "relationships" is the best way to go about deciding whose law applies to this transaction.  The parties themselves decided that Michigan law should apply; and considerations of uniformity, simplicity, clarity and efficiency lead me to accept their resolution of the problem.  My colleague's discussion of the various interests is interesting but I think overly complex and convoluted and seems to me to impair the explicit obligations concerning the governing law that the parties themselves wrote into their contract.  Therefore, I would affirm the judgment of the district court.