NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0849n.06

Case No. 10-6176

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RONALD B. HALEY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | *Dec 15, 2011* |
| v. | ) | LEONARD GREEN, Clerk |
| | ) | |
| ELSMERE POLICE DEPARTMENT; CITY | ) | |
| OF ELSMERE; BRANDON | ) | |
| MARKESBERY, Officer, in his capacity as | ) | |
| an officer with the Elsmere Police | ) | ON APPEAL FROM THE |
| Department, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Defendants, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| and | ) | |
| | ) | |
| BRANDON MARKESBERY, Officer, | ) | |
| Individually, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge; ROGERS and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. Plaintiff Ronald B. Haley brought this action against the Elsmere Police Department, the City of Elsmere, and Officer Brandon Markesbery, raising various claims under 42 U.S.C. § 1983 as well as state law claims stemming from an incident in which Markesbery arrested Haley for alcohol intoxication and allegedly used excessive force on him. Here, the only relevant issue is whether the district court erred by denying partial summary

judgment to Markesbery based on qualified immunity for the unlawful arrest claim. We have

jurisdiction to hear the appeal, and we **AFFIRM** the district court.

## FACTS & PROCEDURE

The facts are taken from the district court's opinion:

On August 12, 2007, plaintiff, Ronald B. Haley, went to the American Legion Hall in Elsmere, Kentucky around 9:30 or 10:00 p.m., where he participated in karaoke, drank two beers, and ordered a shot of Jagermeister. Earlier that day, plaintiff had taken Percoset, a drug prescribed for him by his physician, which he took regularly to treat several health issues. (Plf. Depo. 14). Plaintiff testified that he began to feel hot and nauseous around 11:30 p.m., so he walked outside, carrying the Jagermeister, and squatted by his car. Around this time, plaintiff's friend, Angela Ellis, pulled into the lot and parked beside him.

Officer [Markesbery] was conducting a routine check of the area, in part because neighbors had complained of loud noise and drug use on the American Legion property. [Markesbery] also knew that the American Legion maintenance man had asked that the police watch the parking lot in the wake of a recent attack there on him.

[Markesbery] noticed plaintiff squatting in the parking lot of the American Legion, and he radioed dispatch that he was going to investigate a suspicious person. Another Elsmere Police Officer, Steven Robinson, was nearby, heard [Markesbery]'s call, and pulled into the parking lot to provide backup.

[Markesbery] exited his car and approached plaintiff, while Robinson spoke to Ellis. [Markesbery] told plaintiff to stand up and asked what he was doing, and plaintiff told him he was "trying to get up phlegm." (Plf. Depo. 34) [Markesbery] observed that plaintiff was holding a piece of cellophane or tissue that appeared to have a white powdery substance on it. [Markesbery], concluding that plaintiff had been attempting to use drugs, asked plaintiff "where the drugs were." Plaintiff said there were no drugs. (Plf. Depo. 35) [Markesbery] told plaintiff to empty his pockets, and plaintiff pulled kleenex out of them. [Markesbery] said, "See, there's powder," and plaintiff responded that it was only tissue fuzz. (Plf. Depo. 37) [Markesbery] then said there was white powder on the ground, and plaintiff stated, "No, sir, that's bird crap, that's not powder." (*Id.*) [Markesbery] testified that plaintiff made this statement in a "smart" tone. Plaintiff testified that after this point, "the entire situation and [Markesbery's] demeanor changed." (*Id.*)

[Markesbery] then said to plaintiff "You're drunk," to which plaintiff responded that he was not drunk and that he had only had two beers. (Plf. Depo. 39-40) [Markesbery] then saw the cup of Jagermeister and asked plaintiff if it was his,

and plaintiff said it was. [Markesbery] asked plaintiff if he knew that he was not supposed to have the drink in the parking lot, and plaintiff stated that he did not know that. Robinson testified that plaintiff was unsteady on his feet, had bloodshot eyes, and smelled of alcohol. Ellis testified, however, that plaintiff did not appear to be intoxicated.

Markesbery then arrested Haley. Haley alleges that he was roughed up considerably during and after the arrest, but that is irrelevant to this appeal. Haley was charged with alcohol intoxication, public intoxication, and disorderly conduct and assault on a police officer. He was not convicted of any of the charges.

Haley brought a section 1983 action against Markesbery, the City, and the Police Department, alleging unlawful arrest, excessive force, negligent failure to train, negligent hiring and negligent supervision, as well as state law claims for negligent hiring, negligent supervision, assault and battery, and intentional and negligent infliction of emotional distress. The defendants moved for partial summary judgment; Markesbery did not seek summary judgment on the excessive force claim, nor was summary judgment sought on some of the state law claims. The district court granted summary judgment for the defendants on nearly all of the claims, but denied Markesbery qualified immunity on the unlawful arrest claim. That is the only issue on appeal.

## ANALYSIS

"We review de novo a district court's denial of a motion for summary judgment premised on qualified immunity." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002). The familiar qualified immunity inquiry consists of two steps: Under the facts alleged or shown by the plaintiff, whether (1) the defendant violated the plaintiff's constitutional rights; and (2) if so, those rights were clearly established at the time. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Courts need not undertake the analysis in that order. *Id.* at 236. An answer of "yes" to both questions defeats qualified immunity, while an answer of "no" to either question results in a grant of qualified immunity. Regarding claims of false arrest, "[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

## A.    Jurisdiction

As a threshold matter, we must determine whether we have jurisdiction to hear this appeal. Ordinarily, a denial of summary judgment is not immediately appealable. *See Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008). However, a district court's order denying a defendant's motion for summary judgment on qualified immunity grounds is immediately appealable as a "collateral order" where the issue on appeal is not factual, but purely legal. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). "In light of this jurisdictional limitation, a district court's determination that there exists a triable issue of fact cannot be appealed on an interlocutory basis, even when the finding arises in the context of an assertion of qualified immunity." *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) (internal quotation marks omitted). "To be clear, an appellant's contention that the district court erred in finding a genuine issue of fact for trial is *not* the type of legal question which

we may entertain on an interlocutory basis." *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006).

The defendant may present a "purely legal issue" on appeal by (1) conceding all of the facts in favor of the plaintiff, and (2) advancing the argument that, even under plaintiff's version of the facts, the defendant is entitled to qualified immunity. *See Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998) ("[T]he defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case."); *see also Kirby v. Duva*, 530 F.3d 475, 480–81 (6th Cir. 2008) (finding jurisdiction over interlocutory appeal where district court denied summary judgment based on qualified immunity because of factual disputes, and defendant argued that even under plaintiff's version of facts, there was no violation of clearly established law); *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005) (same).

Understandably, it is challenging for a defendant to remain true to his promise to concede a version of the facts most favorable to the plaintiff.[1] If the defendant drifts into advancing his own version of the facts, we may simply ignore his straying from the path, focusing instead only on the plaintiff's facts and the purely legal argument. *See Kirby*, 530 F.3d at 481; *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) ("[W]e may consider a pure question of law, despite the defendants' failure to concede the plaintiff's version of the facts for purposes of the interlocutory appeal . . . ."); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) ("Therefore, this

---

[1] It can also be difficult in the summary judgment context to determine what "plaintiff's version of the facts" really is. *See Hanson v. City of Fairview Park*, 349 F. App'x 70, 75 (6th Cir. 2009) ("Without aid from the parties, resolution of this appeal will 'require reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials.'" (quoting *Johnson*, 515 U.S. at 316)).

court can ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction.").

In this case, we do have jurisdiction. The district court denied qualified immunity based on factual disputes. *See* R.70 at 13 ("Given the totality of these circumstances, the court concludes that a jury question exists as to whether [Markesbery] had probable cause to arrest plaintiff . . . , and that issues of fact as outlined above prevent a grant of qualified immunity on the false arrest claim."). Markesbery has agreed to concede "plaintiff's version of the facts," though he does not quite follow through with that promise in his presentation of the facts. We will ignore Markesbery's tendency to stray from Haley's version of the facts, and address only the question of whether, on Haley's facts, Markesbery is entitled to qualified immunity on the unlawful arrest claim.

## B.    Qualified immunity was correctly denied

According to Plaintiff Haley's version of the facts, he told officers that he had consumed only two beers, and when Officers saw him crouching down by his car, he was trying to cough up some phlegm. Haley acknowledges that he had a cup of liquor with him, but says that the officers never saw him drink from it because he did not in fact do so. Haley testified that he was not intoxicated at the time of his arrest, R.61 (Haley Dep. 1) at 47, and that he asked to take a breathalyzer or field sobriety test, but the officers refused his request, *id.* at 46. Ellis testified that nothing about Haley's manner of speech, demeanor, or how he walked and carried himself indicated that he was under the influence of drugs or alcohol. R.58 (Ellis Dep. 1) at 46–47.[2] Ellis testified that Haley never became

---

[2]Ellis's testimony at first seemed to indicate that her observations about Haley's appearance of sobriety were based on her belief that it would be uncharacteristic of him to be intoxicated because he had a good job that he would not want to jeopardize. But on redirect examination, counsel clarified this by asking, "Do you recall anything about

belligerent or angry with officers, and never cursed at them. *Id.* at 20. Officer Markesbery testified that he was patrolling the area, in part because neighbors had previously, but not on that night, complained of loud noise and drug use on the American Legion property. R.59 (Markesbery Dep.) at 187–88.

Officer Markesbery offers as undisputed his and Officer Robinson's testimony that Haley smelled of alcohol, his eyes appeared bloodshot, and he appeared unsteady on his feet. But we may ignore this testimony because it is not part of Haley's version of the facts, and it clearly is not "undisputed." Ellis's testimony, while not particularly detailed in describing Haley's appearance of sobriety, contradicts the officers' claim that Haley appeared intoxicated and we—unlike Markesbery—will not ignore it.

K.R.S. § 222.202(1), the statute of arrest, states:

> A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity.

Under Haley's version of the facts as they were known to Officer Markesbery, it was objectively unreasonable for an officer to believe he had probable cause to arrest Haley for alcohol intoxication. Though Haley stated that he had consumed two beers, and the officers saw him crouching down (perhaps appearing to be trying to vomit—though no one testified that he ever did vomit), nothing else about his conduct would have made a reasonable officer conclude he was "manifestly" intoxicated. Nor, under Haley's version of the facts, was there any indication that he was

---

Ron's demeanor, how he carried himself, how he walked, how he talked, how he did anything that would have led you to believe that he was under the influence of any alcohol or drugs or anything else?" Ellis responded, "No, sir."

unreasonably annoying anyone. A reasonable officer might have concluded that, had Haley been manifestly under the influence, he could have posed a danger to himself or others because he was in the parking lot, perhaps intending to get in his car. But since a reasonable officer could not have concluded he was manifestly intoxicated in the first place, that is irrelevant. And at any rate, Haley's offer to submit to a breathalyzer undercuts any potential danger he might have posed by driving under the influence. Accepting Haley's version of the facts, a reasonable officer could not have found the elements of the statutory offense of alcohol intoxication. The district court did not commit a purely legal error in denying summary judgment to Markesbery on the basis of qualified immunity.

Markesbery also argues for the first time on appeal that he could have had probable cause to arrest Haley under yet another statute, K.R.S. § 222.202(2), which reads:

> A person is guilty of drinking alcoholic beverages in a public place when he drinks an alcoholic beverage in a public place, or in or upon any passenger coach, or other vehicle commonly used for the transportation of passengers, or in or about any depot, platform, or waiting room.

At no time in the proceedings before the district court did Markesbery ever cite this statute or make this argument. "Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006). Accordingly, we will not consider this new argument. *See Post v. Bradshaw*, 621 F.3d 406, 415 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2902 (2011) (mem.).

Finally, Markesbery correctly points out that the district court did not explicitly address the "clearly established" prong of the qualified immunity test. The court stated: "Given the totality of

these circumstances, the court concludes that a jury question exists as to whether [Markesbery] had probable cause to arrest plaintiff . . . , and that issues of fact as outlined above prevent a grant of qualified immunity on the false arrest claim."

Since *Pearson*, a court need not approach the qualified immunity analysis in the order previously mandated by *Saucier v. Katz*, 533 U.S. 194 (2001). Generally, that procedure allows courts to address the "clearly established" prong first, which often obviates the need to determine whether there was an actual violation of a constitutional right. Here, the court found that issues of material fact prevented a determination of whether Markesbery violated Haley's constitutional right; it said nothing specifically about whether that right was clearly established.

Markesbery wisely advances no argument that the right was not clearly established. "Plainly, the federal right to be subject only to arrest upon probable cause was clearly established." *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009).[3] Markesbery argues only that, accepting the facts as Haley claims Markesbery knew them to be, an officer could have reasonably (though erroneously) believed that there was probable cause to arrest Haley. But as we have explained, that claim must fail.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[3]Alternatively, because the district court referenced earlier the qualified immunity standard, noting the "clearly established prong," we might interpret its holding that "issues of fact . . . prevent a grant of qualified immunity" to mean that the right *was* clearly established but the factual dispute still prevented a finding of qualified immunity.

**Rogers, J., dissenting.** Because Markesbery had probable cause to arrest Haley, I would reverse the district court's denial of summary judgment on the unlawful arrest claim.

Markesbery is entitled to qualified immunity from Haley's wrongful arrest claim because the circumstances as recounted by Haley warrant a prudent officer's believing that Haley was committing the offense of public intoxication in violation of Ky. Rev. St. § 222.202(1). *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (standard for determining whether probable cause existed to justify arrest). Markesbery found Haley on all fours in the parking lot of a bar, circumstances that would lead most observers to conclude that Haley was severely intoxicated. Further, Haley had a cup of alcohol beside him on the ground. While the cup held only a single shot that Haley had not even sipped, that would not have been obvious to Markesbery, because the container was large enough to contain considerably more than a single shot.

The district court found that a factual question existed with regard to probable cause based largely on the deposition testimony of Haley's friend, Angela Ellis, who was nearby at the time of arrest, that she did not believe Haley had been under the influence of drugs or alcohol or had behaved belligerently. R.58 at 18. However, Angela Ellis's testimony is not sufficient to call Markesbery's probable cause determination into question for several reasons. Indeed, her testimony supports a finding that Markesbery had probable cause to believe that Haley was intoxicated. First, Ellis testified that she had only just parked beside Haley when the officers arrived and that she was unable to hear much of the subsequent exchange between Markesbery and Haley because she was talking casually with Officer Robinson. R.58 at 15. Further, she explained that her belief that Haley was not under the influence of drugs was based not on his behavior at the time of arrest, but on the fact

that he had a good job at which he was subject to random drug tests. R.58 at 18-19, 46. To the extent such information is at all useful for determining whether someone is intoxicated, it certainly was not available to Officer Markesbery.

Rather than undermining Markesbery's reasonable belief that Haley was intoxicated, Ellis's testimony actually confirms the aspects of the incident that support a finding of probable cause. She stated that Haley was crouched beside his car and had told her that he was trying to make himself sick. R.58 at 15. She also stated that she thought she and Haley might leave the bar because of Haley's sickness, suggesting that he appeared quite unwell. R.58 at 16. Whether or not Ellis believed Haley's sickness was caused by alcohol, she (like Haley) described the scene in a way that would support an officer's conclusion that Haley was intoxicated.

In addition, as the majority recognizes, "a reasonable officer might have concluded that, had Haley been manifestly under the influence, he could have posed a danger to himself or others because he was in the parking lot, perhaps intending to get in his car." Therefore, because Markesbery's belief that Haley was intoxicated was reasonable, as was his assumption that Haley could have posed a danger to himself or others, Markesbery's arrest of Haley was not unlawful under Ky. Rev. St. § 222.202(1).

Even if there were a genuine issue of material fact as to whether Markesbery committed a constitutional violation, Markesbery is still entitled to qualified immunity because the right was not "clearly established" at the time of his alleged violation. Just because the "federal right to be subject only to arrest upon probable cause [is] clearly established," *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009), does not mean that the "clearly established" prong of the qualified immunity test has been

met in the context of a particular state statute. *Id.* As the Supreme Court said in *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), "[i]t simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that Anderson's search was objectively legally unreasonable." Under the test set forth by the Supreme Court in *Anderson*, *id.* at 640, we are required to "further particulariz[e] the contours of the Fourth Amendment." *Crockett v. Cumberland College*, 316 F.3d 571, 584 (6th Cir. 2003). To find that a right is "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). In the "light of pre-existing law[,] the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. Therefore, the "relevant question" in this case is whether a "reasonable officer could have believed" that probable cause existed to arrest Haley for the offense of public intoxication. *Id.* at 641. In this instance, it cannot be said that it was apparent to Markesbery that it was unlawful to arrest Haley. A reasonable officer could have believed that Markesbery's arrest of Haley was lawful, because precedent from the Supreme Court and our court has not clearly established that showing signs of drunkenness outside a bar, with a nearby open container of liquor, is not sufficient for probable cause that there has been a violation of Kentucky's public intoxication statute.